**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT O'DEKIRK, REBECCA** | ) | |
| **MARIE as individual and as Guardian** | ) | |
| **for MASON PALACIOS** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23 CV 4658** |
| | ) | |
| **AL ROECHNER, MARC REID, PAT** | ) | |
| **MUDRON, JIM MCFARLAND, and** | ) | |
| **JOSEPH HOSEY, SHAW MEDIA** | ) | |
| **NANCY ROECHNER, CITY OF** | ) | |
| **JOLIET, Defendants.** | ) | |

## <u>COMPLAINT</u>

Now come the Plaintiffs, ROBERT O'DEKIRK, REBECCA MARIE, as individual and as

Guardian for MASON PALACIOS, by and through their attorneys, Michael Ettinger and

Alexander Michael of Michael D. Ettinger and Associates P.C., and Dennis Berkson of the Law

Office of Dennis Burkeson and complains of defendants, AL ROECHNER, MARC REID, PAT

MUDRON, JIM MCFARLAND, JOSEPH HOSEY, SHAW MEDIA, NANCY ROECHNER,

and CITY OF JOLIET. In support of such Complaint, Plaintiff hereby alleges as follows:

### <u>JURISDICTION AND VENUE</u>

1.  This action arises under 42 U.S.C. §§ 1983 in which police officers of the CITY OF

    JOLIET (Hereinafter "CITY") acting under color of law, deprived Plaintiff, ROBERT

    O'DEKIRK ( Hereinafter "O'DEKIRK" or "Plaintiff") of his civil and constitutional

    rights and 18 U.S. Code § 1964(a) (jurisdiction over civil RICO claims), wherein the

    CITY  acted as an enterprise by the Defendants to further deliberate illegal conduct

    against O'DEKIRK.

1

2. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction to hear pendant state claims under 28 U.S.C § 1367.

4. Venue in this district is proper under 28 U.S.C. §1391(b). All events occurred within the Northern District of Illinois and all parties reside or have offices within the Northern District of Illinois.

**PARTIES**

5. The Plaintiff, ROBERT O'DEKIRK, is a resident of the state of Illinois, and resides within the Northern District of Illinois.

6. O'DEKIRK is the former mayor of defendant, CITY OF JOLIET.

7. REBECCA MARIE is the wife of O'DEKIRK.

8. MASON PALACIOS is the special needs son of REBECCA MARIE and the stepson of O'DEKIRK.

9. REBECCA MARIE is the legally appointed guardian of MASON PALACIOS.

10. CITY OF JOLIET is a municipality located within the Northern District of Illinois and incorporated in Illinois.

11. AL ROECHNER ("ROECHNER") is a resident of the state of Illinois and resides within the state of Illinois. This individual is being sued in his individual and official capacity.

12. ROECHNER served on the Joliet Police Department since 1991 and was the Police Chief of the CITY between 2018-2021.

13. MARC REID ("REID") is a resident of the state of Illinois and resides within the state of Illinois. This individual is being sued in his individual and official capacity.

14. REID was the former Deputy Chief of Operations for the CITY of Joliet from 2018-2021 and a veteran police officer. REID was previously employed with the City of Joliet internal affairs prior to becoming a Deputy Cheif. He left the Joliet police dept Jan 2021 with many years of police experience.

15. PAT MUDRON ("MUDRON") is a resident of the state of Illinois and resides within the state of Illinois. This individual is being sued in his individual and official capacity.

16. MUDRON is a councilman for District 2 in Joliet since 2015.

17. JIM MCFARLAND ("MCFARLAND") is a resident of the state of Illinois and resides within the state of Illinois. This individual is being sued in his individual and official capacity.

18. MCFARLAND is a former councilman for Joliet between 2013-2016.

19. JOSEPH HOSEY ("HOSEY") is a resident of the state of Illinois and resides within the state of Illinois.

20.  HOSEY was until May of 2022 the managing editor of the Herald News which is a part of Defendant SHAW MEDIA.

21. Defendant SHAW MEDIA has control over the publications of Herald News.

22. SHAW MEDIA approved all articles by HOSEY, knowing they were false, relevant to this action, published in the Herald News.

23. Herald News is a news publication that in part, serves the Joliet, Illinois area.

24. NANCY ROECHNER ("NANCY") is the wife of ROECHNER.

### THE ENTERPRISE: ASSOCIATION IN FACT

25. On or about November 1, 2020, Defendants, ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY, met with then Councilman Donald Dickinson

3

("Dickinson") at ROECHNER's home for a meeting. (Hereinafter this November 1, 2020 shall be referenced as "Meeting" or "the Meeting").

26. ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY form a cabal that is an Association in Fact.

27. The Association in Fact had a purpose to devise a plan or strategy in which ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY could create a public political backlash against O'DEKIRK with the goal of him losing his position as mayor of Joliet and being charged criminally.

28. ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY all disliked or hated O'DEKIRK and throughout O'DEKIRKS's time as mayor, routinely opposed O'DEKIRK on votes, goals, and interests of the CITY in the course of O'DEKIRK carrying out his duties as mayor.

29. ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY each had an ongoing relationship with each other wherein they had begun planning O'DEKIRK's demise since the summer of 2019.

30. The Association in fact carried out their purpose through the predicate acts described below.

## THE SCHEME

31. Knowing or believing that Dickinson was the sort of individual who could easily be manipulated, ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY used Dickinson as their puppet to hatch their conspiracy and further their scheme.

32. During the Meeting, ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY, had a lengthy discussion. During such conversation the five of them each

4

agreed and conspired to fabricate false claims against Plaintiff, O'DEKIRK, with the sole intention of having O'DEKIRK charged with a crime in order to damage his political standing and reputation in the community of Joliet.

33. ROECHNER, NANCY, REID, MUDRON, MCFARLAND and HOSEY did this with the intent of advancing their own political and career goals and agendas in the CITY OF JOLIET, and with the intention of damaging the political prospects of O'DEKIRK.

34. It was imperative for ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY to damage the reputation of O'DEKIRK because he was their political opponent in Joliet and they saw him as a political obstacle to their career and political goals in Joliet.

35. ROECHNER, NANCY, REID, MUDRON, MCFARLAND and HOSEY, during the meeting, conspired and concocted a false allegation of intimidation against O'DEKIRK.

36. ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY, convinced Donald Dickinson ("Dickinson") through coercion, intimidation, and undue influence, to make a false police report against O'DEKIRK.

37. Dickinson had sent photos of his genitals to an individual with whom he had been romantically involved with.

38. ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY came into possession of these photos.

39. Specifically, ROECHNER, NANCY, REID, MUDRON, MCFARLAND, and HOSEY threatened to reveal the photographs of Dickinson to ruin his political career in Joliet and Will County, Illinois.

40. Dickinson, feeling compelled under threat of these photos being released and the threat of false criminal charges being brought against him by the other attendees of the meeting, made a '*report*' to REID falsely claiming O'DEKIRK intimidated him.

41. The '*statements*' Dickinson made to REID alleged in summary that O'DEKIRK had come into possession of photos of Dickinson's genitals.

42. Dickinson's statement was that O'DEKIRK threatened him to publicly release the nude photographs of Dickinson to ruin Dickinson's career.

43. O'DEKIRK in reality never had possession of Dickinson's nude photos, nor did he even know of their existence until this scheme became public.

44. REID created a police report based on Dickinson's false statements.

## ALTERNATIVE ENTERPRISE: CITY OF JOLIET

45. In the alternative to the enterprise of Association in Fact, Plaintiff pleads the CITY OF JOLIET as an alternative enterprise.

46. That night, at the Meeting, REID, acting in his official capacity as an Officer of the CITY OF JOLIET, documented these false allegations using an obsolete police form from the CITY.

47. REID's report was handwritten which was outside the routine practice of the Joliet Police.

48. REID's report being on an outdated form was also outside the routine practice of Joliet Police.

49. REID, having just conspired with ROECHNER, MUDRON, MCFARLAND, and HOSEY to fabricate these false allegations and coercing Dickinson, made the report knowing the allegations against O'DEKIRK were false.

6

50. That REID, ROECHNER, MUDRON, and MCFARLAND, all are officials of the CITY of Joliet and used their position within the CITY to further their scheme.

51. By using their position and authority within the CITY, they made CITY a central figure in the scheme.

52. REID, knowing the article was false, did not file the report with the Joliet Police Department, or enter the report into any Joliet Police database.

53. The handwritten report on an obsolete form implies that O'DEKIRK was using the threat of leaking such photographs to intimidate Dickinson for his political gain.

54. The handwritten report does not identify the source of information for these vague threats, and relies on double and triple hearsay of unidentified persons.

55. A subsequent "three-tiered" forensic investigation by the Illinois State Police ("ISP") of Dickinson's phone did not yield any pictures of his genitals.

56. The investigation did reveal that information was recently erased from the phone prior to the forensic investigation.

57. REID was the person who recovered the phone and handled the phone prior to turning it over for investigation.

58. REID did not have authority to perform any investigation on the phone and tampered with it.

59. REID made two copies of Dickinson's phone. The first was a full copy of the phone which he kept to himself. The second was a copy with only select portions of what was on the phone containing only the things he wanted the ISP and other investigators to see.

60. REID passed along this second copy with his selected redactions for further investigation.

61. The redacted second copy of the phone removed any evidence of the conspiracy and plans to fabricate evidence against O'DEKIRK.

62. REID, being a 23 year police veteran and Deputy Chief, should have known the proper procedure would have been to simply seal the phone, place it into evidence, and send it off to forensic investigators.

63. The only reason for REID, an experienced officer, to tamper with the phone would have been to conceal evidence detrimental to himself and the others he conspired with.

64. Ultimately, O'DEKIRK was never charged with any crime.

65. O'DEKIRK never even possessed any compromising pictures of Dickinson or his genitals and never made any threat of any kind toward Dickinson.

## SECOND ALTERNATIVE ENTERPRISE: HERALD NEWS

66. In the alternative to the aforementioned enterprises, Plaintiff pleads the Herald News as an alternative enterprise.

67. HOSEY, who was also part of the discussions and agreement at the Meeting to fabricate these false charges against O'DEKIRK, used his position as managing editor at the Herald News to print an article on November 2, 2020 detailing the allegations in REID's phony report.

68. HOSEY facilitated the printing of the article in the Herald News knowing that the contents of the report were false.

69. SHAW MEDIA through Herald News printed the article knowing its contents were false.

70. The article was published with the sole intent and purpose of damaging O'DEKIRK's public image.

71. The goal of publishing the article was to either get O'DEKIRK removed as mayor or to lose the next election.

72. That HOSEY has published a number of articles criticizing O'DEKIRK over the years in the Herald News.

73. That SHAW MEDIA continued to support and allow HOSEY's ongoing defamatory statements of O'DEKIRK.

## PREDICATE ACTS

74. Predicate Act 1 – Threatening and coercing Dikinson to file a false report as outlined above.

75. Predicate Act 2 - As previously described above, REID's preparation of the report on November 1, 2020 that he knew to be a fabrication constitutes a predicate act. Such preparation of a report constitutes official misconduct in violation of 720 ILCS 5/33-3 and 42 U.S.C. 1983.

76. Predicate Act 3 - As previously described above, REID's deleting incriminatory evidence on Dickinson's phone in advance of the forensic investigation is obstruction of justice in violation of 720 ILCS 5/31-4.

77. Predicate Act 4 - As previously described above, HOSEY's publication of statements in the Herald News that he knew to be false are defamatory.

78. Predicate Act 5 - NANCY at various times in 2021 and 2022 texted Dickinson telling him in essence to "stick to the story."

79. Predicate Act 6 - HOSEY continued to publish articles with negative comments towards O'DEKIRK, with the last known article being dated May 7, 2022 with the intent of damaging O'DEKIRK's reputation and political standing.

9

80. Predicate Act 7 – Refusal to Cooperate with a valid and properly issued subpoena to cover up the scheme, as outlined below.

## VICTIMS AND INJURIES

81. That O'DEKIRK is a victim and was injured in that he was publicly defamed.

82. O'DEKIRK was ridiculed in the public eye in Joliet.

83. O'DEKIRK's political career was damaged and specifically he lost re-election for Joliet Mayor in April of 2023.

84. O'DEKIRK's wife, Rebecca Marie, was also a victim as this public humiliation caused her great stress and caused her great emotional distress.

85. O'DEKIRK's stepson, Mason Palacios, was also a victim and was injured in that hearing this news caused him mental and physical health problems.

86. Mason Palacios is a special needs child.

87. Dickinson is a victim who was injured. Dickinson was threatened, charged criminally, his reputation damaged, his political career destroyed and on information and belief his mental health destroyed.

88. Dickinson has stated that this situation has ruined his life.

89. The People of the City of Joliet are all victims in that they have been injured by being deprived of the honest services of their police force.

90. The People of the City of Joliet are also all victims in that they have been injured by being deprived of a fair and honest election, free of influence from the corruption of this conspiracy caused by officials of the CITY of Joliet.

## ONGOING COVERUP OF THE SCHEME

91. The Office of the Inspector General ("OIG") has since begun an investigation into the corruption of the Defendants.

92. A subpoena was issued by the OIG to the Illinois State Police for the records relating to the fabricated report on O'DEKIRK.

93. Large portions of the subpoena response remain unanswered or are redacted.

94. To date, the subpoena has not been fully complied with.

## COUNT I: 42 U.S.C. § 1983

*Against All Defendants*

95. Plaintiff hereby repleads and realleges all preceding paragraphs as though fully set forth herein.

96. That by agreeing to fabricate false claims in a police report and pursue false charges, the Defendants employed by CITY, and acting in their official capacity as employees of the CITY and its police force, did act to deprive O'DEKIRK to deprive him of rights.

97. That REID fabricated evidence in order to see O'DEKIRK criminally charged, knowing such evidence to be fabricated.

WHEREFORE Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor and against Defendants and provide the following relief:

A. Monetary damages in an amount to be determined by the Court to compensate for the defendant's actions including but not limited to those incurred for the election, lost political advancement and political standing, lost wages, lost productiveness, costs, pain and suffering, emotional suffering and any other losses resulting from such unlawful action.

B. Attorney's fees pursuant to 42 U.S.C. 1983 and 1988.

11

C. Any other relief the Court deems fair and equitable or permissible by law.

## COUNT II: RACKETEERING IN VIOLATION OF 18 U.S.C. § 1962(c)

*Against All Defendants*

98. Plaintiff hereby repleads and realleges all preceding paragraphs as though fully set forth herein.

99. That the defendants formed an enterprise that fabricated evidence in order to see O'DEKIRK criminally charged, knowing such evidence to be fabricated.

WHEREFORE Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor and against Defendant and provide the following relief:

A. Monetary damages in an amount to be determined by the Court to compensate for the defendant's actions including but not limited to those incurred for the election, lost political advancement and political standing, lost wages, lost productiveness, costs, pain and suffering, emotional suffering and any other losses resulting from such unlawful action.

B. Attorney Fees

C. Treble Damages

D. Punitive Damages

E. Any other relief the Court deems fair and equitable or permissible by law.

## COUNT III: CONSPIRACY TO COMMIT RACKETEERING IN VIOLATION OF 18 U.S.C. § 1962(d)

*Against All Defendants*

100.     Plaintiff hereby repleads and realleges all preceding paragraphs as though fully set forth herein.

101.     That the defendants formed an enterprise that agreed to fabricate evidence in order to see O'DEKIRK criminally charged, knowing such evidence to be fabricated.

WHEREFORE Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor and against Defendant and provide the following relief:

A.  Monetary damages in an amount to be determined by the Court to compensate for the defendant's actions including but not limited to those incurred for the election, lost political advancement and political standing, lost wages, lost productiveness, costs, pain and suffering, emotional suffering and any other losses resulting from such unlawful action.

B.  Attorney Fees

C.  Treble Damages

D.  Punitive Damages

E.  Any other relief the Court deems fair and equitable or permissible by law.

## COUNT IV: CONSPIRACY TO COMMIT RACKETEERING IN VIOLATION OF 18 U.S.C. § 1962(d)
### (Vicarious Liability)
*Against CITY*

102.     Plaintiff hereby repleads and realleges all preceding paragraphs as though fully set forth herein.

103.     That the defendants formed an enterprise that agreed to fabricate evidence in order to see O'DEKIRK criminally charged, knowing such evidence to be fabricated.

104. That REID by virtue of using Joliet Police Reports, and using his position in his official capacity as Deputy Chief of Joliet to make the report and fabricate the report, makes the CITY of Joliet a central figure in the scheme.

WHEREFORE Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor and against Defendant and provide the following relief:

A. Monetary damages in an amount to be determined by the Court to compensate for the defendant's actions including but not limited to those incurred for the election, lost political advancement and political standing, lost wages, lost productiveness, costs, pain and suffering, emotional suffering and any other losses resulting from such unlawful action.

B. Attorney Fees

C. Treble Damages

D. Punitive Damages

E. Any other relief the Court deems fair and equitable or permissible by law.

## COUNT V: Indemnification

*Against CITY*

105. Plaintiff hereby repleads and realleges all previous paragraphs of this complaint as though they have been fully set forth and stated herein.

106. Under Illinois law (745 ILCS 10/9-102) a public entity is financially responsible for the actions of its employees carried out within the scope of their employment.

WHEREFORE Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor and against Defendant and provide the following relief:

A. Monetary damages in an amount to be determined by the Court to compensate for the defendant's actions including but not limited to those incurred for the election, lost political advancement and political standing, lost wages, lost productiveness, costs, pain and suffering, emotional suffering and any other losses resulting from such unlawful action.

B. Attorney's fees pursuant to 42 U.S.C. 1983 and 1988.

C. Any other relief the Court deems fair and equitable.

## COUNT VI: WILLFUL AND WANTON CONDUCT

### *Against All Defendants*

107.    Plaintiff hereby repleads and realleges all previous paragraphs of this complaint as though they have been fully set forth and stated herein.

108.    That due to their positions as Police Officers and CITY who provides a Police Force, the police officers are sworn to uphold the laws.

109.    That the Defendants failed to uphold or perform their sworn duties.

110.    That as a result of their actions they threatened, extorted Dickinson, and defamed O'DEKIRK.

WHEREFORE Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor and against Defendant and provide the following relief:

A. Monetary damages in an amount to be determined by the Court to compensate for the defendant's actions including but not limited to those incurred for the election, lost political advancement and political standing, lost wages, lost productiveness, costs, pain

15

and suffering, emotional suffering and any other losses resulting from such unlawful action.

B. Any other relief the Court deems fair and equitable.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *Against All Defendants*

111. Plaintiff hereby repleads and realleges all previous paragraphs of this complaint as though they have been fully set forth and stated herein.

112. That due to the actions of the Defendants, the Plaintiffs suffered extreme emotional distress.

WHEREFORE Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor and against Defendant and provide the following relief:

Respectfully Submitted,

/s **Alexander Michael**

_____

Alexander Michael
Attorney for Plaintiff
Ettinger and Associates
12413 S Harlem
Suite 203
Palos Heights, IL 60463
708-923-0368

/s **Michael D. Ettinger**

_____

Michael Ettinger
Attorney for Plaintiff
Ettinger and Associates
12413 S Harlem
Suite 203
Palos Heights, IL 60463
708-923-0368

16

/s **Dennis Berkson**

_____

Dennis Berkson
203 N. LaSalle Street
Suite 2100
Chicago, IL 60601
312-726-7402

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all counts that he is entitled to one by law.

Respectfully Submitted,


/s **Alexander Michael**

_____

Alexander Michael
Attorney for Plaintiff
Ettinger and Associates
12413 S Harlem
Suite 203
Palos Heights, IL 60463
708-923-0368

17