UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT O'DEKIRK, ET. AL, ) | |
| ) | |
| Plaintiff, ) | Case No. 23 CV 4658 |
| ) | |
| vs. ) | Hon. Martha M. Pacold |
| ) | |
| AL ROECHNER, ET AL, ) | Magistrate Judge Jeffrey Cole |
| ) | |
| Defendants. ) | |

**DEFENDANT CITY OF JOLIET'S MEMORANDUM OF LAW
IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

## INTRODUCTION

Plaintiff Robert O'Dekirk served two terms as the City of Joliet's mayor. He tried for a third but was trounced by a 2–1 margin.[1] He blames that loss on sleazy schemes cooked up by a cabal of political foes. But "the price of political dirty tricks must be collected at the ballot box rather than the courthouse." *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 940 (7th Cir. 2018). This misguided lawsuit fails to heed *Jones*'s warning and should be swiftly dismissed.

## FACTS ALLEGED[2]

The individual defendants are O'Dekirk's political foes. (Compl. ¶¶ 27–29, 33–34) They include former Joliet Police Chief Al Roechner, (*id.* ¶ 12), his wife Nancy, (*id.* ¶ 24), former Joliet Police Deputy Chief Marc Reid, (*id.* 14), current councilperson Pat Mudron, (*id.* ¶ 16), former

---

[1] *See* "Joliet mayoral race results: Mayor Bob O'Dekirk concedes to opponent Terry D'Arcy," ABC7 Chicago News, April 5, 2023, available at https://abc7chicago.com/joliet-il-election-results-will-county-2023-mayoral-race-mayor/13090119/ (last visited Sept. 8, 2023). This result is generally known in this district and not subject to reasonable dispute, so judicial notice is proper. Fed. R. Civ. P. 201.

[2] The City treats these facts as true *for purposes of this motion only* given the case's procedural posture.

councilperson Jim McFarland, (*id.* 18), and reporter Joe Hosey. (*Id.* ¶¶ 20–21) These people (the "political foes") had been plotting O'Dekirk's political demise since at least 2019 (*Id.* ¶ 29)

The political foes allegedly met with former councilperson Donald Dickinson on or about November 1, 2020 at the Roechner's home. (*Id.* ¶ 25) They sought to use him as their stooge in order to gin up bad publicity against O'Dekirk. (*Id.* ¶¶ 31–32) Dickinson had sent an explicit photo of himself to a romantic partner, and the political foes somehow obtained a copy of this image. (*Id.* ¶¶ 37–38) They buffaloed Dickinson into making a false police report against O'Dekirk, threatening to leak the photo if he did not follow their directions. (*Id.* ¶¶ 35, 39)

Dickinson then made a police report to Reid, claiming that O'Dekirk "intimidated" him by saying that he had a copy of the photo and threatened to leak it, while in reality O'Dekirk didn't have, or even know about, this photo. (*Id.* ¶¶ 40–43) Reid allegedly "created a police report" based on Dickinson's statement, (*id.* ¶ 44), that was "fabricated" or "false." O'Dekirk further alleges a slew of procedural irregularities in how Reid handled the matter, (*id.* ¶¶ 46–48, 52–63), and that Hosey printed newspaper articles detailing Dickinson's allegations, (*id.* ¶¶ 67–70), which all the political foes knew were false. (*Id.* ¶¶ 36, 52, 68)

All this allegedly caused O'Dekirk to be "publicly defamed" and "ridiculed" in Joliet, and thus lose reelection. (*Id.* ¶¶ 81–83) His wife and child also suffered "emotional distress" due to these events.[3] (*Id.* ¶¶ 84–87) More telling, however, is what is *not* alleged. O'Dekirk never alleges that he or his family were ever searched, arrested, prosecuted, or convicted. Nor does he allege that he was muzzled from telling the voters his side of the story during the campaign.

---

[3] The complaint also alleges that Dickinson and "the people of the City of Joliet" were injured. (Compl. ¶¶ 87–90) These allegations are irrelevant and can safely be ignored because O'Dekirk has no standing to represent these non-parties. *Massey v. Helman*, 196 F.3d 727, 741 (7th Cir. 1999).

# ARGUMENT

The fundamental problem with this suit is that neither the federal constitution nor RICO allow recovery for the emotional or reputational injuries O'Dekirk claims to have suffered. Illinois law is another dead end for such claims. The state's Tort Immunity Act bars a municipality's liability for "any action of its employees that is libelous or slanderous or for the provision of information" in any oral or written format. 745 ILCS 10/2-107. The Court could easily stop there and dismiss this suit on those grounds alone.

But if the Court wanted additional reasons, they abound. The complaint's allegations do not establish the "pattern of racketeering activity" RICO requires. It also fails to plead any violation of a specific, enumerated constitutional right. The theory of causation, that O'Dekirk would have won reelection but for the defendants' actions, is wild speculation that fails *Iqbal*'s plausibility test. More fundamentally, the federal courts do not umpire electoral grievances of this type. Rather, they understand that "many false statements are made during political campaigns and that many a stratagem that one side deems clever will be seen by the opposition as a dirty trick." *Gonzales v. Madigan*, 990 F.3d 561, 564 (7th Cir. 2021). At bottom, "[v]oters rather than judges" must decide when one side has gone overboard" because recruiting the federal judiciary as a referee would do far more harm than good. *Id.*

## I. STANDARD OF REVIEW.

Every complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that does not "fails to state a claim on which relief may be granted." Fed. R. Civ. Proc. 12(b)(6). The court should accept all well-pleaded facts as true. *Twombly*, 550 U.S. at 556. But this presumption of truth does not apply to legal conclusions masquerading as facts. *Iqbal*, 556

3

U.S. at 678. Thus, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Ultimately, if a complaint "pleads facts that are 'merely consistent with' a defendant's liability," it fails to cross the "plausibility" threshold and should be dismissed. *Iqbal*, 556 U.S. at 678 (*quoting Twombly* 550 U.S. at 557)).

## II. Plaintiffs' Federal Civil Rights Claim is Baseless.

Count I alleges that the defendants "did act to deprive O'DEKIRK to deprive him of rights." (Compl. ¶ 96 [*sic*]). The count invokes 42 U.S.C. § 1983, but it is conspicuously silent on *which* constitutional rights were violated. The vagueness only highlights that the answer is *none*.

The complaint repeatedly refers to false or fabricated police reports about O'Dekirk. This is repeated in Count I, (Compl. ¶ 96), so it appears that O'Dekirk is trying to plead an evidence fabrication claim, in violation of his due process rights under the Fourteenth Amendment. But such a claim demands that "*the evidence was used at his criminal trial.*" *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (emphasis added). O'Dekirk was never arrested, let alone tried. As the Seventh Circuit has held, fabricated evidence "in a drawer" does not "cause an infringement of anyone's liberty interest" and thereby violate the federal constitution. *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012). Alleging that his political foes *wanted* to see him charged (*see, e.g.*, Compl. ¶¶ 27, 96) will not suffice. An "evidence fabrication" claim requires *a criminal trial. Patrick*, 974 F.3d at 835. There wasn't one.

O'Dekirk does not plead a plausible constitutional claim under any other theory. He does not allege any *Monell* claim against the City itself. He does not allege that he was "searched" or "seized," (he wasn't), so he has no Fourth Amendment claim. *McCoy v. Harrison*, 341 F.3d 600, 605–06 (7th Cir. 2003) (Fourth Amendment covers "searches and seizures," not "unreasonable, unjustified or outrageous conduct in general"). He does not allege that he was denied his right to

counsel, to free speech, equal protection, or any other specific right. He suggests there is some nebulous, non-textual right to "a fair and honest election" (as he defines it) that the defendants violated. (Compl. ¶ 90) But federal courts do not, and should not, rewrite the federal constitution's text in order to police shenanigans in local elections. *Gonzales*, 990 F.3d at 564. Bad as the disease may be, that cure is worse. *See id.*

O'Dekirk insists there is a federal constitutional right not to be defamed. (*Cf.* Compl. ¶ 81) But the Supreme Court held the opposite in *Paul v. Davis*, 424 U.S. 693 (1976). Reputational harm is not protected by the Fourteenth Amendment. *Id.* at 712.

The Seventh Circuit applied *Paul* in a case dealing with far more egregious facts. There, the plaintiff was a former elected sheriff. *Hinkle v. White*, 793 F.3d 764, 765 (7th Cir. 2015). He alleged that the defendant, an Illinois State Police investigator, "spread the rumors that he was an arsonist and child molester" demolishing his employability. *Id.* at 766. This gossip was alleged "retaliation" for the sheriff's "crossing White [the investigator] on other matters." *Id.* Despite these disturbing facts, and substantial evidence that the rumors hurt the plaintiff's job prospects, *Hinkle* reiterated that "the Due Process Clause of the Constitution does not provide a remedy for defamation, even of the worst kind." *Id.* at 771. Rather, a plaintiff must show a change to "legal status." *Id.*

The *Hinkle* plaintiff could not. Neither does O'Dekirk. Indeed, he does not even try. If the *Hinkle* plaintiff had no due process claim, O'Dekirk and his family also have no claim.

5

### III. Plaintiffs' RICO Claims are Baseless.

Counts II–V allege violations of the federal RICO statute. The elements of a RICO claim are codified in 18 U.S.C. § 1962 subsections, (a) to (d). O'Dekirk invokes subsection (c) in Count II and subsection (d) in Counts III and IV. These claims fail for three independent reasons.

As a threshold matter, RICO is a sledgehammer of a statute, originally aimed at the mafia, and "is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). It is not the appropriate vehicle for routine or "isolated" misdeeds. *See id.* The subsections in § 1962 vary slightly, but they all require a "pattern of racketeering activity." Such a "pattern" requires two underlying crimes from an enumerated list, called "predicate acts," and that these acts meet a "continuity plus relationship" test. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 827–28 (7th Cir. 2016).

#### A. RICO Does Not Cover Damages for Personal or Reputational Injuries.

Civil RICO suits are limited to damages to "business or property." 18 U.S.C. § 1964(c). Any "recovery for personal injuries and the pecuniary losses incurred there-from" is barred. *Ryder v. Hyles*, 27 F.4th 1253, 1257 (7th Cir. 2022) (citations omitted). Yet that is exactly what O'Dekirk seeks, money "to compensate for" his "lost political advancement and political standing, lost wages, lost productiveness, costs, pain and suffering, emotional suffering." (Compl. ¶¶ 99, 101, 104) None of those things amount to injuries to *business* or *property*.

The reference to "lost wages" does not change this outcome. The Seventh Circuit long ago noted that "[m]ost personal injuries—loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering, to name a few—will entail some pecuniary consequences," but that does not make them "business or property" injuries for RICO purposes. *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992). Another case spoke even more directly, holding

6

that "earnings stemming from the lost opportunity to seek or gain employment are, as a matter of law, insufficient" for a RICO claim when they ultimately arise from "what is, at base, a personal injury." *Evans v. City of Chicago*, 434 F.3d 916, 930–31 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). The RICO claim is seeking damages for personal injuries, not business or property injuries, and fails on this basis alone.

### B. O'Dekirk Has Not Adequately Alleged RICO "Predicate Acts."

As noted above, a "pattern of racketeering activity" requires at least two crimes from an enumerated list in 18 U.S.C. § 1961(1) occurring within a ten-year period. *Empress Casino*, 831 F.3d at 826. That list includes scores of *federal* crimes, and also any *state* crime involving "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter" or drug offenses that is punishable by a year in prison or more.

The complaint lists seven alleged predicate acts. (Compl. ¶¶ 74–80) None qualify as a predicate act under RICO. For starters, the only federal statute identified as having been violated is § 1983. (*Id.* ¶ 75) That is a civil statute, not a criminal statute, and is certainly not listed in 18 U.S.C. § 1961(1). The complaint alleges violations of several Illinois statutes, but none dealing with "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter" or drug offenses. Thus, they cannot be RICO predicate acts.

The complaint references "deprivation of honest services." (Compl. ¶¶ 89, 90) So, perhaps it is clumsily trying to allege federal wire fraud or extortion under the Hobbs Act as predicate RICO acts. If so, this theory flops. "Honest services" is a species of wire fraud, albeit one the Supreme Court has sharply pruned in recent years. *See, e.g.*, *McDonnell v. United States*, 136 S. Ct. 2355 (2016). But at its "core," an "honest services" fraud requires bribery. *Empress Casino*, 831 F.3d at 826 (citing *Skilling v. United States*, 561 U.S. 358, 405–08 (2010)). Nothing in

7

the complaint can plausibly be read to deal with a bribe. Similarly, while the complaint uses the word "extortion" to describe the political foes using Dickinson as their cat's paw, (*See* Compl. ¶¶ 74, 110), "extortion" under the Hobbs Act requires that "property be obtained" by threatened force or violence. *Rennell v. Rowe*, 635 F.3d 1008, 1011 (7th Cir. 2011).

Indeed, federal courts have made pellucidly clear that deceptive or dishonest political tactics do not fit within wire fraud or extortion statutes. *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1285 (S.D. Fla. 2022) (faulting plaintiff's counsel for "ignore[ing] Supreme Court holdings" that federal wire fraud statutes require attempt to acquire property). Here, none of the political foes obtained "property." Nor did they threaten force or violence.

For the same reason, none of the purported "predicate acts" qualify as bribery or extortion under Illinois law. There was no exchange of property. *See* 720 ILCS 5/16-1(a)(3) (defining "theft" to include obtaining property "by threat control over property of the owner," given that there is no crime formally labeled "extortion").

The other alleged predicate acts are for official misconduct, obstruction, defamation, and not cooperating with a valid subpoena. The first two are crimes, but not the type covered by § 1961(1). The third, defamation, is solely a civil matter. The fourth, alleged noncompliance by a third party, the Illinois State Police, with an undescribed subpoena issued by some other *non-judicial* body, (*see* Compl. ¶¶ 80, 91–94), flunks the straight face test as a purported RICO "predicate act." It is not only a civil matter, but one to be fought before whatever court under whose auspices the subpoena was issued.

### C. O'Dekirk's Allegations Do Not Amount to a "Pattern" Under RICO.

Even if O'Dekirk could show two "predicate acts," those acts must satisfy the "continuity plus relationship" test to qualify as a "pattern of racketeering" for a civil RICO claim. *Empress Casino*, 831 F.3d at 827–28. "Continuity" is "a temporal concept," meant to distinguish "organized, long term, habitual criminal activity," such as a drug dealing operation or a protection racket from "one-off crimes." *Id.* at 828 (citations omitted). This means there must be "a threat of continued criminal activity." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1002 (7th Cir. 2004)(citations omitted). This threat can be classified as either "closed ended" or "open ended," which mean "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989).

The Seventh Circuit has laid down several "factors" to evaluate whether either species of continuity exists. *Empress Casino*, 831 F. 3d at 828. The factors for evaluating closed-end continuity are "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Id.* at 828 (citations omitted). For open-ended continuity, they are whether "a specific threat of repetition exists, (2) the predicates are a regular way of conducting [an] ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Id.* (citations omitted). No factor is determinative, and the factors are to be interpreted with an eye towards a "natural and commonsense result" in light of RICO's goal of targeting long term criminal operations. *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005).

9

Additional Seventh Circuit precedent simplifies the analysis in this case. It teaches that "continuity" never exists in two scenarios, both of which appear in this case. First, because duration is essential for RICO continuity, a handful of actions occurring over months, rather than years, "is too short to show the necessary continuity for a "pattern" of racketeering." *Jennings v. Auto Meter Prod., Inc.*, 495 F.3d 466, 473–74 (7th Cir. 2007) (no continuity where actions occurred over ten months). *Jennings* is one of many Seventh Circuit cases holding that a few actions, scattered over two years or less, will not equal "continuity." *See, e.g.*, *Roger Whitmore's*, 424 F.3d at 673 (small number of predicate acts over two years insufficient); *Uni*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 922 (7th Cir. 1992) (scheme lasting seven to eight months was "precisely the type of short-term" misconduct insufficient for a RICO claim).

Here, O'Dekirk alleges activity that began in November 2020 by the "intimidation" of Dickinson and ended in May 2022 with Housey's last article. (Compl. ¶¶ 25, 79) Thus, he is alleging a handful of actions covering at most 18 months. That does not equal "continuity."

Second, any conspiracy or scheme, however nefarious, flunks the "continuity" requirement if it has "a natural ending point." *Empress Casino*, 831 F.3d at 829. The Seventh Circuit has repeatedly relied on the "natural ending point" standard to hold that a plaintiff's civil RICO claim was inadequate. For the sake of space, three examples will suffice.

*Empress Casino* arose from bribes by racetrack executives to obtain favorable legislation from former governor Blagojevich. *Id.* at 820. This scheme had an obvious end point; "once Blagojevich signed the bill, the scheme was over," so there was no "continuity" no matter how many predicate acts were committed. *Id.* at 829. *Roger Whitmore's* dealt with a sleazy pay-to-play arrangement between towing companies and an elected sheriff. Here again, there was no "continuity" because all of the predicate acts alleged related to campaign fundraising from a

10

specific campaign. *Roger Whitmore's*, 424 F.3d at 674. *Gamboa* dealt with an alleged scheme by various police detectives to frame a murder suspect. It did not satisfy the continuity requirement even though the plaintiff alleged numerous acts over many years, because "once the frame-up was put to rest, the scheme was over." *Gamboa,* 457 F.3d at 710.

Here, there is a similar natural end point—O'Dekirk's defeat in his bid for reelection. Once that was accomplished, any "scheme" was over because his political foes achieved their goal. As another court reviewing a RICO challenge brought by a losing electoral candidate held, "a single, limited time objective" to "vilify" the plaintiff and ensure his electoral defeat is the antithesis of the "continuity" a civil RICO claim demands. *Trump*, 626 F. Supp. 3d at 1305–06. O'Dekirk's complaint expressly pleads such a "natural ending point." (Compl. ¶¶ 27–29) In so doing, it pleads the RICO claims out of court.

## IV. Plaintiffs' State Law Claims Are Baseless.

There are three tagalong state law claims. Count V, for indemnification, Count VI, willful and wanton conduct, and Count VII, for intentional infliction of emotional distress (IIED). They are purportedly based on the defendants' "threat[]s" and "extortion" against Dickinson, and "defam[ation]" of O'Dekirk. (Compl. ¶¶ 110–12) They are deficient for two reasons.

First, they are time-barred. State law claims, except for medical malpractice claims, against a municipality or its employees must be filed within one year. 745 ILCS 10/8-101(a). The complaint alleges that the actions towards Dickinson took place back in November of 2020. (Compl. ¶¶ 25, 32) The suit was not filed until July 19, 2023, (*see id.*), so the state law claims based on these actions are untimely. The complaint never identifies any specific defamatory statement by any City employee (as opposed to Housey and his paper, which are private citizens), let alone such a statement within the one-year statute of limitations.

11

Second, they are barred by the Illinois' Tort Immunity Act, which directly states that "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information" in any oral or written format. 745 ILCS 10/2-107. So, even if any City employees made "libelous" or "slanderous" statements about O'Dekirk, or "provided" any "information" that was false, those acts cannot lead to liability. *See Ramos v. City of Peru*, 333 Ill. App. 3d 75, 80, 775 N.E.2d 184, 188-89 (2002) (dismissing, among other claims, a defamation claim against a city because it was barred by section 2-107). If more were needed, the immediately preceding statute says that "[a] local public entity *is not liable for an injury caused by an oral promise or misrepresentation of its employee*, whether or not such promise or misrepresentation is negligent or intentional." 745 ILCS 10/2-106. This confirms that any statements about O'Dekirk by any City employee, even if they were "slanderous" or "libelous" or "intentional misrepresentations" of known facts cannot give rise to municipal liability.

The state law claims against the City are defective and thus must be dismissed.[4] Moreover, the City adopts and incorporates by reference all arguments made by the current or former City employees regarding the state law claims. If the state law claims against the City employees are dismissed, the City must also be dismissed because if no municipal employee is liable for an injury, the municipality is also not liable. 745 ILCS 10/2–109.[5]

---

[4] To be sure, when all the federal claims are dismissed, federal courts often relinquish jurisdiction over parallel state law claims. But federal courts have discretion, when the factors of "judicial economy, convenience, fairness and comity" so warrant, to decide the state claims as well. *Wright v. Assoc. Ins. Comp.*, 29 F.3d 1244, 1251 (7th Cir. 1994). As the Seventh Circuit has noted, "courts sometimes ought to dispose of everything at once." *Bieneman v. City of Chicago*, 864 F.2d 463, 470 (7th Cir. 1988). This is such a time. It is economical and fair to dispose of all these flimsy claims at once.

[5] More broadly, the City adopts and incorporates by reference all arguments made by any other defendant to the extent applicable to the City. The City also underscores that many of the City's arguments also warrant dismissing the claims against the other defendants, which matters to the City because Plaintiffs allege that the City must indemnify some of these individuals. (*See* Compl. Count V)

### V.   PLAINTIFFS' THEORY OF CAUSATION IS BASELESS.

There's yet another reason to dismiss this lawsuit. O'Dekirk's damages all rest on the theory that but for the actions described in the complaint, he would have won reelection. (Compl. ¶ 83) This theory is too speculative as a matter of law.

All plaintiffs must show proximate causation to succeed on their claims. RICO plaintiffs and § 1983 plaintiffs are no exceptions. *County of Los Angeles, Cal. v. Mendez*, 137 S.Ct. 1539, 1548-49 (2017)( § 1983); *James Cape & Sons Co. v. PCC Construction Co.*, 453 F.3d 396 (7th Cir. 2006 (RICO). This Court should hold that O'Dekirk's underlying theory, that the electoral outcome would have been different but for the schemes of his political foes outlined in the complaint, is too speculative as a matter of law and therefore fails *Iqbal*'s plausibility test. How could anyone prove such a counterfactual by a preponderance of the evidence?

Research did not reveal any case asking whether causation was too speculative as a matter of law in the context of a lost election. This is unsurprising; such suits are hardly common. But courts have rejected such speculative "butterfly effect" theories of causation in similar contexts, and their reasoning applies with equal or greater force here

For example, in an antitrust case, Judge Shah held that allegations based on "what might have happened" in related patent litigation were "too speculative and would require legal and factual determinations that go beyond judicially manageable limits," and therefore not "plausible" as a matter of law. *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 843 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of Baltimore v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022). Also, the Seventh Circuit held in *James Cape* that the plaintiff company, who claimed to have been injured due to a big-rigging scheme by its competitors, could not state a RICO claim because the Court "could never be certain whether Cape would have won any of the

13

contracts that were the subject of the conspiracy" regardless of whether the alleged fraud occurred. *James Cape*, 453 F.3d at 403.

Determining whether O'Dekirk, who lost by a 2-1 margin, would have won reelection but for the defendants' alleged actions would be even harder than establishing what might have happened in a single lawsuit or a handful of government contracts. It would require getting into the minds of thousands of voters (and thousands more potential voters) and near-infinite levels of complexity. No court could answer such a question.

## CONCLUSION

At bottom, O'Dekirk's grievances are political and moral, not legal. The merits of his moral and political grievances are uncertain, but irrelevant. What *is* certain is a courtroom is not the right forum to air those grievances, and there is no merit to his legal claims.

Thus, for all of the reasons above, the City respectfully requests that this Court GRANT its motion to dismiss, and do so with prejudice, because no amount of wordsmithing could overcome the phalanx of precedent which bars this specious lawsuit.

Respectfully submitted,

/s/ G. David Mathues
MICHAEL D. BERSANI, # 06200897
G. DAVID MATHUES, # 6293314
*Attorneys for Defendant City of Joliet*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
630-773-4774
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com

14

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT O'DEKIRK, ET. AL, | ) |
| | ) |
| Plaintiff, | ) Case No. 23 CV 4658 |
| | ) |
| vs. | ) Hon. Martha M. Pacold |
| | ) |
| AL ROECHNER, ET AL, | ) Magistrate Judge Jeffrey Cole |
| | ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on **September 15, 2023**, I electronically filed the foregoing *Defendant City of Joliet's Memorandum of Law in Support of Its Rule 12(b)(6) Motion to Dismiss,* with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notification to the following CM/ECF participants:

TO:    Alexander Michael  
           Michael D. Ettinger  
           Michael D. Ettinger & Associates  
           12413 S. Harlem, Ste. 203  
           Palos Heights, IL 60463  
           amichaellaw1@gmail.com  
           craignor@me.com  

Dennis Berkson  
Dennis Berkson & Assoc  
203 N. LaSalle St., Ste. 2100  
Chicago, IL 60601  
dberkson@hotmail.com  

/s/ G. David Mathues  
MICHAEL D. BERSANI, ARDC No. 06200897  
G. DAVID MATHUES, ARDC No. 6293314  
*Attorneys for Defendant City of Joliet*  
HERVAS, CONDON & BERSANI, P.C.  
333 Pierce Road, Suite 195  
Itasca, IL 60143-3156  
630-773-4774  
mbersani@hcbattorneys.com  
dmathues@hcbattorneys.com