Case No. 1:23-cv-04658

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ROBERT O'DEKIRK, REBECCA MARIE
as Individual and Guardian for MASON PALACIOS,

*Plaintiffs*,

v.

AL ROECHNER, MARC REID, PAT MUDRON,
JIM MCFARLAND, JOSEPH HOSEY, SHAW MEDIA,
NANCY ROECHNER, and CITY OF JOLIET,

*Defendants.*

# MEMORANDUM OF LAW
## IN SUPPORT OF AL ROECHNER'S AND NANCY GRIPARIS'
## RULE 12(B)(6) MOTION TO DISMISS

Filed: September 27, 2023

Honorable Martha Pacold (District Judge)
Honorable Jeffrey Cole (Magistrate Judge)

*Respectfully submitted by:*

Ryan B. Jacobson, Esq.
(Atty I.D. 6269994)
Danessa P. Watkins, Esq.
(Atty I.D. 6314231)
AMUNDSEN DAVIS LLC
150 North Michigan Ave., Suite #3300
Chicago, Illinois 60601
(312) 894-3252
rjacobson@amundsendavislaw.com
dwatkins@amundsendavislaw.com

*Attorneys for Defendants,
Al Roechner and Nancy Griparis*

Defendants, **AL ROECHNER** ("Roechner") and **NANCY GRIPARIS**, incorrectly sued as "Nancy Roechner" ("Griparis"), submit the following in support of their Rule 12(b)(6) Motion:

## MATERIAL BACKGROUND

Plaintiff, Robert O'Dekirk ("O'Dekirk"), brings this lawsuit as vindication for reputational harm he endured during his term as Mayor of the City of Joliet (the "City") and for his recent loss for reelection in the 2023 mayoral race. Complaint, ¶¶ 6, 81-83 (Dkt. #1) ("Compl."). The Defendants are O'Dekirk's alleged political foes, who each "disliked or hated O'Dekirk" and "routinely opposed" his initiatives as mayor. *Id.* at ¶¶ 28 & 34. The "Individual Defendants" include: (1) Roechner, former Chief of Police of the City; (2) Griparis, the wife of Roechner; (3) Marc Reid ("Reid"), the former Deputy Chief of Operations for the City; (4) Pat Mudron ("Mudron"), councilman for District 2 in Joliet; (5) Jim McFarland ("McFarland"), former councilman for Joliet; and (6) Joseph Hosey ("Hosey"), former managing editor of the Herald News. *Id.* at ¶¶ 11-20 & 24. Plaintiffs also name the City and Shaw Media as Defendants. *Id.* at ¶¶ 10 & 20-23.

It is alleged that the Individual Defendants met on November 1, 2020 (the "Meeting"), and formed a "cabal" for the purpose of creating a public political backlash against O'Dekirk to spoil his chances at reelection. *Id.* at ¶¶ 25-27. Plaintiffs claim the Individual Defendants somehow came to possess intimate photographs that councilman Donald Dickinson ("Dickinson"), a non-party, took of himself and sent to a romantic partner. *Id.* at ¶¶ 37-38. During the Meeting, the Individual Defendants threatened to release the photos unless Dickinson made a false police report against O'Dekirk. *Id.* at ¶¶ 25, 32, 36 & 39.

That same evening, Dickinson made a statement to Reid claiming O'Dekirk acquired the photographs of Dickinson's genitals and threatened to publicly release them to ruin Dickinson's career. *Id.* at ¶¶ 41-42. Reid created a police report based on Dickinson's allegedly fabricated complaint. *Id.* at ¶¶ 40, 44 & 46. The police report was never filed with the Joliet Police Department and never

entered into any Joliet Police database. *Id.* at ¶ 52. O'Dekirk was never charged with any crime in connection with Dickinson's report. *Id.* at ¶ 64. On November 2, 2020, the day after the Meeting, Hosey printed an article in the Herald News detailing the allegations of Dickinson's fabricated police report against O'Dekirk. *Id.* at ¶ 67.

As a result of the Defendants' actions, O'Dekirk claims he was publicly defamed, ridiculed in the public eye, his political career was damaged and he lost re-election for Joliet Mayor. *Id.* at ¶¶ 81-83. O'Dekirk's wife, Rebecca Marie, and stepson, Mason Palacios ("Palacios") are also named Plaintiffs. They claim to have suffered humiliation, stress, emotional distress, and mental and physical health problems due to the public humiliation Defendants inflicted on O'Dekirk. *Id.* at ¶¶ 84-85.[1]

Plaintiffs attempt to bring the following causes of action against Roechner and Griparis:

**Count I**: Violation of 42 U.S.C. § 1983
**Count II**: Racketeering in Violation of 18 U.S.C. § 1962(c)
**Count III**: Conspiracy to Commit Racketeering in Violation of 18 U.S.C. § 1962(d)
**Count VI**: Willful and Wanton Conduct
**Count VII**: Intentional Infliction of Emotional Distress ("IIED")

Not one of these claims is sufficiently pled to withstand dismissal under Rule 12(b)(6). Moreover, no set of facts would entitle Plaintiffs to relief in connection with Defendants' alleged conduct, rendering any attempt to amend their pleading futile. All claims against Roechner and Griparis should therefore be dismissed *with prejudice. Bogie v. Rosenberg*, 705 F.3d 603, 608, 616 (7th Cir. 2013) (confirming dismissal with prejudice is appropriate when amendment would be futile).

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007); Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must allege

---

[1] The claim that Dickinson and the People of the City are additional victims should be ignored as Plaintiffs have not established standing to represent these non-parties' interests. *U.S. v. Hansen*, 599 U.S. 762, 4 (2023) ("litigants typically lack standing to assert the constitutional rights of third parties"); *Massey v. Helman*, 196 F.3d 727, 740-41 (7th Cir. 1999) ("courts recognize a general rule against allowing a litigant to seek vindication of the rights of a third party not before the court").

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). While the Court is to "accept all well-pleaded allegations of fact as true . . . [l]egal conclusions do not get the same benefit" and may be disregarded. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). The plaintiff must plead facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Otherwise, dismissal is required. Fed. R. Civ. P. 12(b)(6).

## LEGAL ANALYSIS

### I. PLAINTIFFS CANNOT SUSTAIN AN ACTION UNDER §1983

"The purpose of § 1983 is to deter state actors, and private individuals in collaboration with state officials, from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citing *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)). "To state a valid cause of action under § 1983, a plaintiff must demonstrate that: (1) the defendant(s) deprived him of a right secured by the Constitution or any law of the United States; and (2) the deprivation of that right resulted from the defendant(s) acting under color of law." *Id.* Here, Plaintiffs have failed to plead sufficient facts to support a § 1983 claim where: (1) they were not deprived of a federal right; (2) Roechner, as Chief of Police, has qualified immunity; (3) Griparis, as a private citizen, did not act under color of law; and (4) Plaintiffs' claims are time-barred.

### A. Plaintiffs Have Not Been Deprived of a Right Under Federal Law

The threshold inquiry in a § 1983 suit requires identification of the specific constitutional right at issue. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017). O'Dekirk alleges he was deprived of his

4

rights in violation of § 1983 when, "Defendants employed by CITY, and acting in their official capacity as employees of the CITY and its police force . . . agree[ed] to fabricate false claims in a police report and pursue false charges[.]" Compl. ¶ 96. Critically, the fabricated police report was never filed or entered into any Joliet Police database, and, as a result, O'Dekirk was never charged with a crime, prosecuted, tried, imprisoned or otherwise. *Id.* at ¶¶ 52 & 64. Sound precedent confirms, "[t]he essence of a due-process evidence-fabrication claim is that the accused was *convicted and imprisoned* based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (emphasis added). "The manufacture of false evidence, 'in and of itself' . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right." *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) (citing *Buckley v. Fitzsimmons,* 20 F.3d 789, 795 (7th Cir. 1994) (where the court found, if a prosecutor tortured a witness to obtain a statement implicating defendant and put the statement "in a drawer, or framed it and hung it on the wall *but took no other step,*" no constitutional right of defendant would be violated)). O'Dekirk is therefore unable to maintain a §1983 claim based on Roechner's, Griparis' and the other Individual Defendants' alleged act of coercing Dickinson to make a fabricated police report that did not result in criminal prosecution against O'Dekirk. *Id.*; *Patrick*, 974 F.3d at 835.

O'Dekirk also claims he was publicly defamed and lost the election for mayor as a result of Defendants' actions. Compl. ¶¶ 81-83. First, there is no constitutional right to be free from defamation even if an offending publication renders it "virtually impossible for the [individual] to find new employment in his chosen field." *Hinkle v. White*, 793 F.3d 764, 770 (7th Cir. 2015) (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001)); *see also, Willan v. Columbia Cnty.*, 280 F.3d 1160, 1163 (7th Cir. 2002) ("the interest in reputation is not a form of liberty or property within the meaning of the due process clauses"). Far more egregious, allegedly false publications by government officials have

5

been deemed nonactionable as a violation of due process rights.[2] Additionally, any interest O'Dekirk may have had in being elected as City Mayor derived from state law, not federal law, and cannot form the basis of § 1983 claim. *Winchester v. Illinois Republican Party*, No. 18-CV-1137-SMY-RJD, 2019 WL 4735910, at *3 (S.D. Ill. Sept. 27, 2019) (relying on *Snowden v. Hughes*, 321 U.S. 1 (1944), and dismissing claim by incumbent committeeman to the State Central Committee of the Republican Party who lost reelection allegedly as a result of numerous irregularities in administration of the voting process).

Finally, in alleging they suffered emotional distress, Rebecca Marie and Palacios have not demonstrated deprivation of a constitutional right. Compl. ¶¶ 84-85. The desire to be free from emotional harm "has not been recognized as an independent liberty interest protected by due process." *Manley v. Law*, 889 F.3d 885, 891 (7th Cir. 2018) (explaining, "[s]tates protect limited personal interests in emotional well-being through the torts of intentional and negligent infliction of emotional distress and through compensatory damages for emotional distress tied to other tort liability").

Plaintiffs cannot satisfy their initial burden of proof, leaving no occasion for further analysis before dismissing their § 1983 claim *with prejudice*. Notwithstanding, below are three additional bases for finding that Roechner and Griparis cannot be held liable as a matter of law under Count I.

### B. Roechner, as Chief of Police, is Entitled to Qualified Immunity.

"The Supreme Court has long recognized the private and social costs of dragging government officials into civil litigation." *Estate of Davis v. Ortiz*, 987 F.3d 635, 638 (7th Cir. 2021) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)). Accordingly, the Court instructs, "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Id.* (quoting *District of Columbia v.*

---

[2] *See, e.g., Hinkle*, 793 F.3d at 766 & 771 (affirming judgment for defendants on § 1983 claim where two employees of the Illinois State Police spread rumors plaintiff was a child molester and arsonist, rendering him unable to find a job in law enforcement management); *Roake v. Forest Pres. Dist. of Cook Cnty.*, No. 15 C 8949, 2016 WL 3521895, at *3 (N.D. Ill. June 28, 2016), *aff'd*, 849 F.3d 342 (7th Cir. 2017) (dismissing § 1983 claim against defendant-officers who allegedly told plaintiff's prospective employers that he had a history of consuming alcohol on the job).

*Wesby*, 583 U.S. 48, 62 (2018)). As detailed above, Plaintiffs have not established Roechner violated their recognized rights under the Constitution or federal law. *See supra* at § I(B). As Roechner served as Police Chief for the City at all times relevant to the Complaint, he is entitled to qualified immunity from Plaintiffs' § 1983 claims. *Id.*; Compl. ¶¶ 11-12.

### C. **Plaintiffs Cannot Establish Griparis, a Private Citizen, Acted Under Color of Law.**

To hold Griparis, a private citizen, liable under § 1983, Plaintiffs must plead sufficient facts to show she acted under color of law by conspiring with a state actor. *Fries*, 146 F.3d at 457. "[M]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (quoting *Fries*, 146 F.3d at 458). The Complaint must establish *facts*, not merely conclusions, showing: (1) Griparis reached an understanding with state actors to deprive Plaintiffs of their constitutional rights; and (2) Griparis was a willful participant in joint activity with the state actors. *Id.* Plaintiffs have not satisfied their burden on either element.

Plaintiffs fall short of meeting their burden under the first element. Plaintiffs have not been deprived of a constitutional or federal right and are without standing to seek redress under § 1983. *See supra* at § I(A). As for the second element, there are insufficient facts pled to support a finding that Griparis acted under color of state law. To prevail, "plaintiff[s] must identify a sufficient nexus between the state and the private actor to support a finding that the deprivation committed by the private actor is 'fairly attributable to the state.'" *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

At the outset, Count I is not even directed at Griparis, despite being brought "Against All Defendants." Compl. p. 11. Plaintiffs allege, "[t]hat by agreeing to fabricate false claims in a police report and pursue false charges, the Defendants *employed by City*, and *acting in their official capacity as employees of the City and its police force*, did act to deprive O'Dekirk to deprive him [sic] of rights." *Id.* at ¶

7

96 (emphasis added). Griparis is neither a City employee nor a member of its police force, and she is in no way implicated in this Count on its face.

Considering the Complaint as a whole, Plaintiffs first allege Griparis, along with the other Individual Defendants, "conspired and concocted a false allegations of intimidation against O'Dekirk." *Id.* at ¶ 35. Allegations of conspiracy alone are plainly improper. *Spiegel*, 916 F.3d at 616. Even if Griparis had assisted in preparing the allegedly fabricated police report (which she did not), the law is clear that such actions by a private citizen cannot support a §1983 claim. *Id.* at 617. To wit, the Seventh Circuit has repeatedly held, "the mere act of furnishing information to law enforcement officers," and "filing false police reports is not actionable under § 1983." *Id.* (citing *Butler v. Goldblatt Bros.*, 589 F.2d 323, 327 (7th Cir. 1978); *Kelley v. Myler*, 149 F.3d 641, 649 (7th Cir. 1998); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 435 (7th Cir. 1986)).

Plaintiffs also suggest Griparis, "at various times in 2021 and 2022 texted Dickinson telling him in essence to 'stick to the story.'" Compl. ¶ 78. This allegation also falls short, as "Plaintiff[s] must still show that *the state* is 'somehow *responsible* for the allegedly unlawful actions taken by the private party.'" *Rappe v. Unknown Train Conductor*, No. 18-CV-6172, 2020 WL 1166179, at *3 (N.D. Ill. Mar. 11, 2020) (citing *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996)) (emphasis added). The Complaint is devoid of any facts to support a reasonable inference that Griparis' supposed text messages to Dickinson "may be fairly treated as [action] of the [City] itself." *Wade*, 83 F.3d at 905 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Ultimately, Plaintiffs offer zero basis to find Griparis acted under color of law justifying liability under § 1983. Count I must be dismissed as to Defendant Griparis.

### D. **Plaintiffs' § 1983 Claims are Time-Barred.**

Finally, Count I is subject to dismissal where the claim was not timely filed. Illinois recognizes a two-year statute of limitations for § 1983 claims. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). "Section 1983 claims 'accrue when the plaintiff knows or should know that his or her

constitutional rights have been violated.'" *Id.* (citing *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)); *see Diaz v. Shallbetter,* 984 F.2d 850, 855 (7th Cir. 1993) ("[E]very constitutional tort actionable under §1983 is treated as a personal injury, with the claim accruing when the injury is inflicted").

Here, Plaintiffs allege they were harmed as a result of the Meeting on November 1, 2020, when the Individual Defendants purportedly coerced Dickinson to make a false police report against O'Dekirk. Compl. ¶¶ 25, 35-36, 40 & 46. The following day, the Herald News printed an article detailing the allegations in the fabricated police report. *Id.* at ¶ 67. Accordingly, Plaintiffs knew as of at least November 2, 2020, that they suffered the damages alleged, but waited until July 19, 2023, to initiate suit. Plaintiffs' § 1983 action is time-barred and should be swiftly dismissed.

## II.     PLAINTIFFS HAVE NOT ASSERTED VIABLE CLAIMS UNDER RICO[3]

"Congress passed RICO in an effort to combat organized, long-term criminal activity." *Jennings v. Auto Meter Prod., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). Although § 1962(c) provides a private right of action in civil court, "the statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Id.* (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992)). Here, Plaintiffs attempt to assert causes of action under § 1962(c) (Count II) and a conspiracy claim under § 1962(d) (Count III). However, Plaintiffs' RICO claims appear aimed at generating harmful headlines against the Defendants in the local news rather than pursuing a cognizable claim. *See Haroco, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 747 F.2d 384, 404 (7th Cir. 1984), *aff'd,* 473 U.S. 606 (1985) (noting the unfair stigmatization of defendants as "racketeers" when they are sued under RICO in a civil lawsuit). For the multiple, independent reasons stated below, Counts II and III require swift dismissal *with prejudice.*

---

[3] The Movants expressly incorporate by reference and adopt the arguments for dismissal of Plaintiffs' RICO claims, as set forth in their Co-Defendants' dispositive Motions.

**A. Plaintiffs Failed to Plead that the Movants Engaged In Two Predicate Acts.**

A direct RICO violation under § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Jennings*, 495 F.3d at 472. Plaintiffs must establish defendants engaged in at least two predicate acts of racketeering, as enumerated under 18 U.S.C. § 1961(1), within a ten-year period. *Id.* (citing 18 U.S.C. § 1961(5)). The Complaint purports to set forth seven "predicate acts," but not one of these acts qualifies as "racketeering activity" under RICO. *Compare* Compl. ¶¶ 74-80, *with,* 18 U.S.C. § 1961(1).

Two allegations implicate the present movants. First, "Predicate Act 1" claims the Individual Defendants threatened and coerced Dickinson to file a false police report, which, when applying the most deferential reading, constitutes a loose allegation of extortion. Compl. ¶ 74. Although a Hobbs Act (18 U.S.C. § 1951) violation is considered "racketeering activity," the crime of "extortion" requires a defendant obtain property from another. 18 U.S.C. § 1951(b)(2). The Complaint is devoid of facts establishing Roechner, Griparis or any of the Individual Defendants wrongfully acquired Dickinson's property when they convinced him to make a police report. Additionally, "Predicate Act 5" vaguely claims Griparis "at various times in 2021 and 2022 texted Dickinson telling him in essence to 'stick to the story.'" Compl. ¶ 78. It is unclear what law Griparis purportedly violated. To the extent Plaintiffs claim Griparis engaged in obstruction of justice under Illinois law, this crime is not recognized under § 1961(1). *Albarran v. Peoples Gas Light & Coke Co.*, No. 89 C 9138, 1990 WL 141465, at *4 (N.D. Ill. Sept. 21, 1990). Plaintiffs have not established that Roechner and Griparis engaged in racketeering.

**B. Plaintiffs Have Not Pled a Pattern of Racketeering Activity**

To curtail misuse of RICO, "courts carefully scrutinize the pattern requirement," under which "plaintiffs must satisfy 'the so-called continuity plus relationship test: the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong).'" *Jennings*, 495 F.3d at 472 (citing *Midwest Grinding Co.*, 976 F.2d at 1022). "The continuity

10

requirement ensures that RICO targets 'long-term criminal conduct[.]'" *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 828 (7th Cir. 2016) (citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989)). Between the two recognized concepts of continuity, only closed-ended continuity is relevant here, as the Defendants' alleged scheme had a "natural ending point" of removing O'Dekirk as mayor. *Id.* at 828-29; Compl. ¶¶ 27, 30, 33-34, 70-71.

Plaintiffs cannot meet their burden of proof on this element, which requires that the predicate acts "extend over a substantial period of time." *Midwest Grinding Co.*, 976 F.2d at 1024 (quoting *H.J. Inc.*, 492 U.S. at 242); *see Jennings*, 495 F.3d at 474-75 (finding predicate acts occurring over ten months was insufficient for RICO, and collecting cases with similar findings). The alleged Meeting, coercion of Dickinson, and preparation of a false police report occurred on November 1, 2020, and a news story detailing the fabricated claims against O'Dekirk was published the following day. Compl. ¶¶ 25-27, 32-46, 66-71. In other words, over the course of *two days*, Roechner, Griparis and the Individual Defendants carried out their alleged conspiracy to defame O'Dekirk and ruin his reelection prospects. This is not racketeering activity that "carries with it an implicit threat of continued criminal activity in the future." *Id.* at 473. Accordingly, Counts II or III should be dismissed.

### C. Plaintiffs Did Not Suffer the Requisite Damage to Business or Property.

RICO limits civil actions to "[a]ny person *injured in his business or property* by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). "The requirement that civil RICO plaintiffs allege an injury to 'business or property' serves to 'preclude recovery for personal injuries and the pecuniary losses incurred there-from.'" *Ryder v. Hyles*, 27 F.4th 1253, 1257 (7th Cir. 2022) (citing *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992)). Here, the Complaint focuses entirely on Plaintiffs' personal injuries to reputation and general well-being. Compl. ¶¶ 81-85. Plaintiffs have not alleged an injury for which RICO provides a remedy and, therefore, Counts II and III should be dismissed with prejudice.

**III.  PLAINTIFFS CANNOT SUSTAIN AN INDEPENDENT CAUSE OF ACTION FOR "WILLFUL AND WANTON CONDUCT"**

Count VI purports to allege a claim for "Willful and Wanton Conduct." Compl. p. 15. As "[t]here is no separate, independent tort of willful and wanton conduct," this cause of action is meritless on its face. *Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1273 (N.D. Ill. 2021) (quoting *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 19)).

The Complaint evidences Plaintiffs' intent to assert a claim for defamation. They allege Defendants acted with willful and wanton disregard when "they threatened, extorted [sic] Dickinson, and defamed O'Dekirk." Compl. ¶ 110. As Dickinson is not a party to this action, Plaintiffs lack standing to assert any actions on his behalf. *See supra* at n.2. O'Dekirk also fails to state a viable action for defamation against the present movants. The Complaint is devoid of any allegation that *Roechner or Griparis* made a false and defamatory statement about O'Dekirk. To the extent Plaintiffs seek to hold Roechner and Griparis liable for *convincing* or *causing* Dickinson to make false claims in a police report, said report was prepared on November 1, 2020, and the fabricated claims about O'Dekirk were made public in a news article the following day. *Id.* at ¶¶ 36, 40, 46 & 67. Pursuant to Illinois law, O'Dekirk's defamation claim expired one year following publication of the alleged defamatory statements, and is therefore untimely. 735 ILCS § 5/13-201.

Additionally, Plaintiffs purport to bring Count VI "Against All Defendants." Compl. p. 15. Yet, once again, the allegations are expressly directed to the City and its "Police Officers" who "are sworn to uphold the laws," and allegedly "failed to uphold or perform their sworn duties." *Id.* at ¶¶ 108-09. Undisputedly, Griparis is a private citizen and is not implicated by the facts pled in support of Count VI. *Id.* at ¶¶ 24, 107-110. Nor have Plaintiffs pled any duty Griparis owed to Plaintiffs that she breached, proximately causing Plaintiffs' injuries. *Cusick*, 573 F. Supp. 3d at 1273 (*quoting McLean Cty. Unit Dist. No. 5*, 2012 IL at ¶ 19) (confirming, "'willful and wanton conduct is regarded as an aggravated form of negligence' and so 'a plaintiff must plead and prove the basic elements of a negligence claim'").

For the reasons set forth, Plaintiffs' Willful and Wanton claim under Count VI must be dismissed *with prejudice* as to both Roechner and Griparis.

## IV. PLAINTIFFS FAILED TO ASSERT A VIABLE CLAIM FOR IIED

### A. Neither The Alleged Conduct Nor The Resulting Harm are Sufficiently "Extreme" and "Severe" to Support an IIED Claim.

A legally sufficient IIED claim must allege facts that establish: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Chang Hyun Moon v. Kang Jun Liu*, 2015 IL App (1st) 143606, ¶ 23 (1st Dist. 2015) (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988)). "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath*, 126 Ill. 2d at 90 (citing Restatement (Second) of Torts § 46, comment *d,* at 73 (1965)). Rather, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and, "the distress inflicted must be so severe that no reasonable man could be expected to endure it." *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 973 (2nd Dist. 1991) (quoting *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976)); *see Knierim v. Izzo,* 22 Ill.2d 73, 85 (1961) ("It has not been suggested that every emotional upset should constitute the basis of an action. Indiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts, and the law should aim to toughen the psyche of the citizen rather than pamper it").

Here, Roechner's and Griparis' alleged misconduct was convincing Dickinson to provide a false statement to Reid, *which did not result in a filed police report, let alone any form of prosecution against O'Dekirk*. Compl. ¶¶ 36, 40, 44, 46, 52 & 64. Griparis also allegedly told Dickinson to "stick to the story" on various occasions in 2021 and 2022. *Id.* at ¶ 78. Under Illinois law, such conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."

13

*Layne*, 210 Ill. App. 3d at 972-73 (holding defendant's false statement to the police that plaintiff harassed, assaulted, and verbally threatened a coworker was not extreme and outrageous conduct).[4]

Plaintiffs also fail to plead the requisite level of *severe* emotional distress. *Id.* at 973. Their claims of suffering ridicule, humiliation, great stress, emotional distress, and anguish is the exact type of boilerplate pleading courts have routinely deemed insufficient to survive dismissal. Compl. ¶¶ 82-85 & 112; *Chang Hyun Moon*, 2015 IL App (1st) at ¶ 25 (citing *Adams v. Sussman & Hertzberg, Ltd.,* 292 Ill. App. 3d 30, 38 (1997)); *see Jain v. Butler Sch. Dist. 53*, 303 F. Supp. 3d 672, 685 (N.D. Ill. 2018) (finding plaintiffs' feelings of "fear, anger, grief, and shock," as well as "nervousness, headaches, irritability, and restless sleep," were "inadequate to permit a reasonable inference that they experienced the level of emotional distress necessary to support their [IIED] claims").

Finally, as to O'Dekirk's wife and stepson, there is no allegation or factual basis to conclude that Roechner and Griparis *knew* there was high probability that their conduct would cause these Plaintiffs *severe* emotional distress. *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 20 (1992). Though Plaintiffs allege, "Mason Palacios is a special needs child," they fail to plead that Roechner and Griparis *were aware* Palacios was "particularly susceptible to emotional distress, because of some physical or mental condition or peculiarity." *Id.*; Compl. ¶ 86. There are simply insufficient facts to support an IIED claim by *any* of the Plaintiffs against the present movants.

### B. Plaintiffs' Claims Under Count VII Are Time-Barred.

Roechner's and Griparis' offending conduct occurred during the Meeting on November 1, 2020, when they allegedly coerced Dickinson to make a false police report against O'Dekirk. Compl.

---

[4] *See also Schiller v. Mitchell*, 357 Ill. App. 3d 435, 437-38 (2005) (affirming dismissal of IIED claim where defendants made hundreds of calls to police to lodge false complaints, causing plaintiffs to be subjected to several investigations, citations and criminal misdemeanor charges, finding defendants' conduct did not rise to the level of "atrocious, and utterly intolerable in a civilized community"); *Berkos v. Nat'l Broad. Co.*, 161 Ill. App. 3d 476, 496-97 (1987) (dismissing an IIED claim based on a publication that falsely portrayed the plaintiff as one of the Judges implicated in "Operation Greylord"); *Khan v. American Airlines,* 266 Ill. App. 3d 726, 732 (1st Dist. 1994), *abrogated on other grounds by Velez v. Avis Rent A Car System, Inc.,* 308 Ill. App. 3d 923, 928 (1999) (dismissing IIED claim that defendants knowingly sold plaintiff a stolen airline ticket, causing him to be arrested and charged with theft, despite knowing he was traveling to his father's funeral).

¶¶ 25, 27, 31-44. Although the police report was never filed, the facts contained therein were published in the Herald News on November 2, 2020. *Id.* at ¶¶ 52 & 67. O'Dekirk expressly claims Defendants intended to ruin his reputation and, as a result of their actions, "he was publicly defamed," "ridiculed in the public eye in Joliet," and his "political career was damaged[.]" *Id.* at ¶¶ 32, 70 & 81-83.

Much like his Willful and Wanton action, O'Dekirk's IIED claim sounds in defamation. *Id.* at 25, 27, 31-44, 52, 67, 70 & 81-83. The injuries pled by Rebecca Marie and Palacios also derive from the same alleged false and defamatory publications about O'Dekirk. *Id.* at 84-85. Plaintiffs cannot sidestep the protections afforded to free speech through artful pleading. The Illinois legislature carved out a shorter, one-year limitations period for defamation actions, "and the statute of limitations begins to run, on the date of publication of the defamatory material." *Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 73 (1st Dist. 2010); 735 ILCS 5/13-201. Accordingly, the Plaintiffs' claims under Count VII accrued on November 1 and 2 of 2020, and are untimely as a matter of law.

Even if Count VII is treated as a valid claim of IIED, it is still untimely. Plaintiffs failed to file their lawsuit within two years of the November 1, 2020 Meeting. 735 ILCS 5/13-202. The vague allegation that Griparis texted Dickinson at various times in 2021 and 2022 cannot support a "continuing tort" theory[5] that would extend the accrual date of Plaintiffs' IIED claims because there is no allegation that these *private* messages caused Plaintiffs to suffer severe emotional distress. Compl. ¶¶ 81-85 (claiming, O'Dekirk "was injured in that he was *publicly* defamed," "ridiculed *in the public eye*," and his "*political career* was damaged," Rebecca Marie was injured where "this *public humiliation* caused her great stress," and Palacios "was injured in that *hearing this news* caused him mental and physical health problems" (emphasis added)). Plaintiffs failed to timely file an IIED action against Roechner and Griparis, and Count VII should be dismissed *with prejudice*.

---

[5] *See Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003) (explaining "continuing tort theory" and confirming, "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury").

**WHEREFORE**, for the reasons set forth above, Defendants **AL ROECHNER** and **NANCY GRIPARIS** respectfully request that this Honorable Court enter the following Order:

(1) Dismissing *with prejudice* all claims asserted against the Movants in the Plaintiffs' Complaint (Counts I, II, III, VI and VII); and

(2) Allowing any additional relief this Court deems just and proper.

    Respectfully submitted,

    AMUNDSEN DAVIS, LLC

    */s/ Danessa P. Watkins*
    Danessa P. Watkins
    Attorneys for Defendants,
    Al Roechner and Nancy Griparis

Ryan B. Jacobson, Esq.
Danessa P. Watkins, Esq.
AMUNDSEN DAVIS, LLC
150 North Michigan Avenue, Suite #3300
Chicago, Illinois 60601
(312) 894-3252 DIRECT
*rjacobson@amundsendavislaw.com*
*dwatkins@amundsendavislaw.com*