UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT O'DEKIRK, REBECCA MARIE as individual and as Guardian for MASON PALACIOS Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | Case No. 23 CV 4658 |
| AL ROECHNER, MARC REID, PAT MUDRON, JIM MCFARLAND, and JOSEPH HOSEY, SHAW MEDIA NANCY ROECHNER, CITY OF JOLIET, Defendants. | ) ) ) ) ) ) ) | Judge: Honorable Jeffery I. Cummings Magistrate Judge: Honorable Jeffrey Cole |

**DEFENDANT JOLSEPH HOSEY'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Defendant, Joseph Hosey, by his attorney James A. Murphy, in support of his motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, states:

**INTRODUCTION**

Plaintiff has filed a seven-count amended complaint. Of the seven counts, five seek relief against Mr. Hosey. Those five are: Count I (42 U.S.C §1983), Count II (RICO 18 U.S.C. §1962(c)); Count III (RICO Conspiracy 18 U.S.C. §1962(d)), Count VI (Willful and Wanton Conduct), and Count VII (Intentional Infliction of Emotional Distress).

For the reasons stated below Counts I, II, III, and VII fail to state a claim upon which relief can be granted. Further Counts VI and VII are barred by the applicable statute of limitations.

1

**FACTUAL BACKGROUND**

The factual allegations are that on November 1, 2020, Defendants Al Roechner, Pat Mudron, Jim McFarland, Joseph Hosey, and Nancy Roechner met with Joliet Councilman Donald Dickinson. (Dkt. No. 58, ¶23.) During the meeting, the individual defendants, threatened to release photos that Dickinson had previously sent of his genitals to an individual with whom he was romantically involved. (Dkt. No. 58, ¶¶34-37.) As a result of this threat, Dickinson made a report to Defendant Marc Reid, the then Deputy Chief of Police, falsely claiming that O'Dekirk had intimidated Dickison by threatening to release nude photos of Dickinson. (Dkt. No. 58, ¶ 38.) Although Reid created the police report based on Dickinson's false statements (Dkt. No. 58, ¶ 42), the report was never filed and the report was not entered it into any Joliet Police database (Dkt. No. 58, ¶ 50). O'Dekirk was never charged with any crime. (Dkt. No. 58, ¶ 62).

It is further alleged that Mr. Hosey used his position as managing editor at the Herald News to print an article on November 2, 2020 detailing the allegations in Reid's phony report while knowing that the allegations were false. (Dkt. No. 58, ¶ 65.)

It is further alleged that Mr. Hosey continued to publish articles with negative comments (which are not specified) against O'Dekirk through May 7, 2022. (Dkt. No. 58, ¶ 75.)

It is claimed that, as the result of the alleged acts, O'Dekirk was injured in that he was publicly defamed, ridiculed, and lost re-election for Joliet Mayor in April of 2023. (Dkt. No. 58, ¶¶ 77, 78, 79.)

It is also claimed that Plaintiff, Rebecca Marie, O'Dekirk's wife, suffered great stress and emotional distress because of O'Dekirk's public humiliation. (Dkt. No. 58, ¶80.) It is similarly claimed that Plaintiff Mason Palacios, O'Dekirk's step son, was injured by hearing the allegations against O'Dekirk in that the news caused Palacios mental and physical health problems. (Dkt. No. 58, ¶81.)

## ARGUMENT

**1.**
**Count I Does Not State a Claim Under 42 U.S.C. §1983**

42 U.S.C. §1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…. 42 USCS § 1983.

As an initial matter, Mr. Hosey is a private citizen and thus could not be acting under color of law. See *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (§1983 under-color-of-law element excludes private conduct, no matter how discriminatory or wrongful).

While the complaint alleges that Mr. Hosey was part of a conspiracy, a viable conspiracy claim under section 1983 requires a plaintiff to allege and prove both a conspiracy and an actual deprivation of rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim. *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 518 (7th Cir. 2020).

In the instant case, the only thing that is alleged is that a police report was filled out by Defendant Reid. (Dkt. 58, ¶ 44.) There is no allegation that Mr. O'Dekirk was arrested or subjected to criminal prosecution as a result of the alleged police report. Indeed, according the complaint, the report was never filed (Dkt. 58, ¶ 50), and Mr. O'Dekirk was never charged (Dkt. 58, ¶ 62).

The only allegations of damage under the §1983 claim are that Mr. O'Dekirk was defamed and lost his bid for re-election to political office. Neither of these is a constitutional injury protected by due process. See *Paul v. Davis*, 424 U.S. 693, 712 (1976)(defamatory publications did not deprive plaintiff of liberty or property interest protected by due process); *Hinkle v. White*, 793 F.3d 764, 771 (7th Cir. 2015)(due process does not provide a remedy for

3

defamation); *Flinn v. Gordon*, 775 F.2d 1551 (11th Cir. 1985)(plaintiff had no constitutional right to win an election); *Snowden v. Hughes*, 321 U.S. 1, 7 (1944)("denial by state action of a right to state political office is not a denial of a right of property or liberty secured by the due process clause").

The claims made by Plaintiffs Marie and Palacios are for emotional distress (Dkt. No. 58, ¶¶ 80, 81) which are also not a basis for protection under the due process clause. *Manly v. Law*, 889 F.3d 885, 891 (7th Cir. 2018).

Accordingly, Count I of the complaint should be dismissed.

## 2.
## Counts II and III Do Not State Claims Under 18 U.S.C. §1962(c) and 18 U.S.C §1962(d) (RICO)

### A.

Civil RICO has been recognized as "an unusually potent weapon--the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

To state a claim for relief under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). Further, a civil RICO claim may only be brought for damage to business or property. 18 U.S.C. 1964(c). *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011).

A pattern of racketeering activity requires the commission of at least two predicate acts enumerated under §1961(1). *DeGuelle*, 664 F.3d at 199. However, the mere commission of two or more predicate acts within ten years of one another does not automatically

4

constitute a pattern of racketeering activity. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). Rather, the acts must demonstrate both a continuity and a relationship in order to constitute a pattern of racketeering activity. *Id.*

**B.**
**The Complaint Fails to Allege Two Predicate Acts**

While the complaint purports to allege seven predicate acts (Dkt. 58, ¶ 70-76), only the first one arguably constitutes an act listed under §1961 – arguably extortion. None of the remaining acts are found under section 1961. The complaint does not allege two predicate Acts and thus does not allege racketeering activity.

Alleged Predicate Act 2 alleges a violation of 720 ILCS 5/33-3 and 42 U.S.C. 1983. (Dkt. 58 ¶71.) 42 U.S.C. 1983 is not listed as a predicate federal statute under §1961. 720 ILCS 5/33-3 is an Illinois State statute. While violation of a state criminal statute can be the basis for a predicate act, the act must involve murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical. 18 U.S.C. §1961(1)(A). The alleged second predicate act involves none of these. It is thus not a predicate act.

Alleged Predicate Act 3 alleges the deletion of incriminating evidence in violation of 720 ILCS 5/31-4. (Dkt. 58, ¶ 72.). Again, there is no allegation of an act involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical. It is thus not a predicate act.

Alleged Predicate Act 4 alleges a defamatory publication. (Dkt. 58, ¶73.) Such an act is not listed in the predicate acts under §1961. It is thus not a predicate act.

Alleged Predicate Act 5 alleges that one of the Defendants told Dickenson "stick to the story." (Dkt. 58, ¶ 74.) It is not clear what this statement is alleged to have violated. Assuming this is meant to involve some type of obstruction, it does not constitute a predicate act because any State law does not involve the State crimes listed in §1961. And, there was no federal action that would implicate any of the federal statues listed in §1961. The statement thus does not constitute a predicate act.

Alleged Predicate Act 6 alleges that Hosey continued to publish "negative comments" towards O'Dekirk. (Dkt. 58, ¶ 75.) This alleges no criminal act and thus cannot be a predicate act under §1961.

Alleged Predicate Act 7 alleges failure to cooperate with a subpoena. (Dkt. 58, ¶ 76.) This is not a listed predicate act. Moreover, it appears from the remainder of the complaint that it was not any of the defendants that failed to cooperate with a subpoena but rather the Illinois State Police. (See Dkt ¶¶ 88, 89.)

It is believed that Plaintiffs will argue that the at least two of the alleged predicate acts fall within the scope of one or more of the following, 18 U.S.C. §1503, 18 U.S.C. §1510, 18 U.S.C. §1511, 18 U.S.C. §1512, and/or 18 U.S.C. §1513.[1] They do not.

In order for there to be a violation of § 1503, it must be shown that there was a pending judicial proceeding, that the defendant was aware of that proceeding, and that the defendant corruptly intended to impede the administration of that judicial proceeding. *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006).

---

[1] While these statutory provisions are not mentioned in the complaint, Plaintiffs identified them as potential predicate acts in a letter sent in response to a draft motion for Rule 11 sanctions. A copy of the Rule 11, draft motion, and the responding letter are attached as Exhibits A, B, and C.

6

There is no allegation of any judicial proceeding nor is there is any allegation that defendants were aware of a judicial proceeding. Thus no predicate act has been alleged based on section 1503.

Section 1510 only involves obstruction relating to the violation of criminal statutes "of the United States" 18 U.S.C. §1510. There is no allegation of a violation of any criminal statute of the United States. Thus, section 1510 cannot be the basis for a predicate act.

Section 1511 only involves obstruction of state criminal laws "with the intent to facilitate illegal gambling business." 18 U.S.C. §1511(a). There is no allegation of any illegal gambling business. Thus, no predicate act is founded on section 1511.

No predicate act is stated for violation of section 1512 since the prohibited conduct must be in relation to an "official proceeding", see 18 U.S.C. §1512, which is defined as a one of several federal proceedings. 18 U.S.C. §1515. Again, there is no allegation of any federal proceeding.

No predicate act is stated for violation of 1513 since the only conduct criminalized under that section is for retaliation related to federal proceedings or federal crimes. There is no allegation of a federal proceeding.

In short, the complaint fails to allege the requisite commission of two predicate acts.

### C.
### The Complaint Fails to Allege Racketeering Activity

Even if there were two or more predicate acts, the complaint does not allege racketeering activity because it does not allege sufficient continuity. The Supreme Court has stated:

> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned

in RICO with longterm criminal conduct. *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989).

The Seventh Circuit explained that closed end continuity requires duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future. *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011).

In the instant case, there is no allegation of a "series of related predicates extending over a substantial period of time." Rather, what is alleged is that Dickinson was threatened on November 1, 2020, which led Dickinson to fill out a false police report which report was then reported by Hosey on November 2, 2020. In short, the alleged conduct lasted two days, a period that is too short to show continuity. See *Jennings v. Auto Meter Prods.*, 495 F.3d 466, 474 (7th Cir. 2007)(10-month period in which only a few predicate acts took place "is too short to show the necessary continuity for a 'pattern' of racketeering").

Accordingly, no racketeering activity is alleged.

## D.
## The Requisite Damage is not Alleged.

A civil RICO claim may only be brought for damage to business or property. 18 U.S.C. 1964(c). *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). In the instant case, the only allegations of damage are that Mr. O'Dekirk was defamed, ridiculed and lost his bid for re-election to political office. (Dkt. 58, ¶77-79.) There is no allegation of any damage to business or property. Similarly, any claims by Marie and Palacios do not allege damage to business or property. (Dkt. No. 58, ¶¶ 80, 81.) Accordingly, Counts II and III should be dismissed.

8

## 3.
### Count VII Does Not State a Claim for Intentional Infliction of Emotional Distress

Almost from its inception, courts have recognized the need to impose strict limiting principles on claims for intentional infliction of emotional distress. *Colunga v. Advocate Health & Hosps. Corp.*, 2023 IL App (1st) 211386, P11.

The elements of a claim for intentional infliction of emotional distress are: (1) that the defendant's conduct was truly extreme and outrageous, (2) that the defendant either intended that his conduct would cause severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) that the defendant's conduct did in fact cause severe emotional distress. *Taliani v. Resurreccion*, 2018 IL App (3d) 160327, ¶ 26.

Furthermore, infliction of emotional distress alone is insufficient to give rise to a cause of action. The emotional distress must be *severe*. Fright, horror, grief, shame, humiliation, worry, etc. may be termed "emotional distress," but these mental conditions alone are not actionable. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976); accord *Honaker v. Smith*, 256 F.3d 477, 495-496 (7th Cir. 2001). A claim will only lie where the distress inflicted is "'so severe that no reasonable man could be expected to endure it.'" *Id*. quoting Restatement (Second) of Torts, sect. 46, comment j (1965).

In the instant case, it is not even alleged that O'Dekirk suffered any emotional distress. (See Dkt. 58, ¶¶ 77, 78, 79.) With regard to Mari and Palacios, there are allegations that they were caused "great emotional distress" and "mental…problems." (Dkt. 58, ¶ 80, 81.) But, there are no specific allegations that would indicate that the stress was so severe that no reasonable man could be expected to endure it.

Moreover, the facts alleged do not show a claim for intentional infliction of emotional distress. Under Illinois law, the tort of intentional infliction of emotional distress corresponds

9

with section 46 of the Restatement (Second) of Torts. *Colunga v. Advocate Health & Hosps. Corp.*, 2023 IL App (1st) 211386, P10. The Restatement recognizes two types of emotional distress claims, "direct" claims and "third-party" claims. *Id.* A direct claim is one where the plaintiff is the victim of the defendant's extreme and outrageous acts and the defendant directs those acts at the plaintiff. A third-party claim is one brought by a bystander, who is a witness to defendant's extreme and outrageous acts directed at another person. *Id.*

In the instant case, there are effectively three acts that Defendants are alleged to have taken. First, they are alleged to have threatened Dickinson with the exposure of nude pictures of him if he did not file a police report accusing O'Dekirk of making the same threat against him. Second, Reid wrote out a police report against O'Dekirk while knowing the contents of the report were false and thereafter did not file it. Third, it is alleged that Mr. Hosey caused an article to be published detailing the allegations in Reid's phony report while knowing that the allegations were false. (Dkt. No. 58, ¶ 65.)

The threats to Dickinson were not made to O'Dekirk. And, it is not alleged that O'Dekirk was a witness to the threats. Thus, the alleged intimidation of Dickinson is not a basis for a claim for intentional infliction of emotional distress.

Similarly, it is not alleged that O'Dekirk was present when the police report was taken down by Reid. O'Dekirk thus could be neither a direct or a third-party victim of such action.

This leaves the alleged defamatory article.[2]

---

[2] While it is also alleged that Mr. Hosey continued to publish negative articles against O'Dekirk, no specifics are given as to what was stated in those articles. (See Dkt. No. 58, ¶ 75.) They thus cannot be the basis for finding that any of the Defendants engaged in the type of conduct that would support a claim for intentional infliction of emotional distress.

The Seventh Circuit has recognized that a claim for intentional infliction of emotional distress has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency. *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998). It is not sufficient that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Id*. Based on this understanding of Illinois law, the Seventh Circuit found that defamatory statements did not support a claim for intentional infliction of emotional distress. *Id*. at 331-332; see also *Kiebala v. Boris*, 2017 U.S. Dist. LEXIS 160333, *18 (defamatory statements generally do not clear the high hurdle for extreme and outrageous conduct). Further, false claims of criminal activity have been found to be insufficient where, as here, the claims did not lead to criminal prosecution.

In *Buchmeier v. City of Berwyn*, 2015 U.S.Dist. LEXIS 96319 (N.D. Ill. 2015), Judge Zagel recognized that "[e]ven in cases where defendants wrongly accuse plaintiffs of something as serious as breaking the law, Illinois courts have maintained the high threshold for 'extreme and outrageous' conduct and have generally sustained only those claims where false accusations led to substantive legal action against the plaintiffs." As discussed previously, there is no allegation that that any legal action was brought against O'Dekirk as the result of the allegedly false allegations against him. See *Khan v. American Airlines*, 266 Ill. App. 3d 726, 733 (1st Dist. 1994) (having plaintiff charged with theft without having reason to believe plaintiff committed the crime did not support claim for intentional infliction of emotional distress).

Accordingly, the conduct alleged does not support a claim for intentional infliction of emotional distress. Count VII should thus be dismissed.

**4.**
**Counts VI and VII are Barred by the Statute of Limitations for Defamation**

The Seventh Circuit has recognized that parties should not be able to disguise claims through artful pleading in order to conceal the true nature of a complaint and thereby avoid requirements or limitations of the true claim. See *Leu v. Norfolk & W. R. Co.*, 820 F.2d 825, 830-831 (7th Cir. 1987); *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 273-274 (7th Cir. 1983), (doubting that Illinois courts would allow an "end run around [the] rules on defamation" by attempting to state another cause of action); see also *Lusby v. Cincinnati Monthly Pub. Corp.*, 1990 U.S. App. LEXIS 9144, *10 (6th Cir. 1990) (it would "unfair to permit plaintiff to recover for the alleged libel under the guise of an action for emotional distress when the [legislature] has specifically elected to limit the availability of such an action through a brief filing period").

In the instant case, it is evident that the true nature of Counts VI and VII are for defamation. With regard to O'Dekirk, the only damages that are alleged are that he was "injured by being publicly defamed" that he was "ridiculed in the public eye" and that he lost re-election for Mayor. (Dkt. 58, ¶¶ 77, 78, 79.) As to Marie, it is alleged that O'Dekirk's public humiliation caused her great stress and emotional distress. (Dkt. 58, ¶ 80.) Similarly, it is alleged that "hearing this news" – presumably the alleged defamatory statements - caused him mental and physical health problems (Dkt. 58, ¶ 82.)

Claims for defamation are subject to a one-year statute of limitation. 735 ILCS 5/13-201. The only defamatory statement that is specifically alleged was made on November 2, 2020 (Dkt. 58, ¶ 65.) The one-year statute thus ran as of November 2, 2021. Assuming that later unspecified negative comments contained defamatory statements, the last of these was published on May 7, 2022. (Dkt. 58, ¶ 75.) Any claim was thus barred as of May 7, 2023. The complaint was not

12

filed until July 19, 2023. (Dkt. 1.) Thus, even if there were defamatory statements published on May 7, 2023, any claim based on such statements was barred by the time the instant complaint was filed. Accordingly, Count VI should be dismissed.

## CONCLUSION

For the foregoing reasons, Counts I, II, III, VI, and VII of the amended complaint should be dismissed with prejudice.

                                             Respectfully submitted,

                   By:    */s/ James A. Murphy*
                            James A. Murphy
                            Attorney for Defendant

James A. Murphy - Attorney No. 6195324
**Mahoney, Silverman & Cross, LLC.**
822 Infantry Drive, Suite 100
Joliet, Illinois 60435
(815) 730-9500
jmurphy@msclawfirm.com
ATTORNEY FOR DEFENDANT

13

## **CERTIFICATE OF SERVICE**

I, JAMES A. MURPHY, an attorney licensed to practice in this Court and before the Courts of Illinois, hereby certify that I filed the **DEFENDANT JOSEPH HOSEY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLIANT** on November 10, 2023, in accordance with Fed. R. Civ. P. 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers. A copy of Defendants' motion was automatically served on Plaintiffs' counsel via the court's electronic filing system.

                                                       */s/ James A. Murphy*
                                                       James A. Murphy