**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT O'DEKIRK, REBECCA MARIE as individual and as Guardian for MASON PALACIOS, Plaintiff, | ) ) ) ) |
| v. | ) Case No. 1:23-cv-04658 ) Hon. Jeffrey I. Cummings |
| AL ROECHNER, MARC REID, PAT MUDRON, JIM MCFARLAND, and JOSEPH HOSEY, SHAW MEDIA, NANCY ROECHNER, and CITY OF JOLIET, Defendants. | ) ) ) ) ) |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR RESPECTIVE**
**RULE 12(B)(6) MOTIONS TO DISMISS THE AMENDED COMPLAINT**

**Table of Contents**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

   I.   PLAINTIFFS CANNOT MAINTAIN AN ACTION UNDER § 1983. ............................ 1

      A.   The Amended Complaint Does Not Identify Any Injury to Plaintiffs' Federal Rights, and the Novel Facts and Legal Theories Improperly Advanced in Plaintiffs' Response Cannot Save Their Meritless § 1983 Claim. ............................................................... 2

      B.   Defendants Roechner, Reid and Mudron are Entitled to Qualified Immunity. ............ 8

      C.   Defendants Griparis, Hosey and McFarland are Private Citizens and Beyond the Reach of § 1983 Based on the Facts Pled. ................................................................................ 9

      D.   Plaintiffs' § 1983 Claim Is Time-Barred. ................................................................... 10

   II.   PLAINTIFFS' DEFENSE OF THEIR RICO CLAIMS FAILS. ...................................... 11

      A.   Plaintiffs Cannot Establish Any Damages Recoverable Under RICO. ...................... 12

      B.   Plaintiffs' Allegations Do Not Establish a RICO "Enterprise." ................................. 14

      C.   Plaintiffs' Attempt to Show "Predicate Acts" Under RICO Falls Short. ................... 15

      D.   Plaintiffs Fail the "Continuity Plus Relationship" Test For a "Pattern" of Racketeering Activity. ..................................................................................................................... 18

   III.   PLAINTIFFS' CLAIMS FOR WILLFUL AND WANTON CONDUCT ARE BASELESS. ................................................................................................................... 21

   IV.   PLAINTIFFS' IIED CLAIMS ARE FUTILE. ............................................................... 23

      A.   The Statute of Limitations Indeed Bars Plaintiffs' IIED Claims. ............................... 23

      B.   Plaintiffs' Response Improperly Relies on Group Pleading and Factual Allegations Beyond the Amended Complaint. ............................................................................... 25

      C.   The As-Pleaded Allegations Do Not Rise to the Level of IIED. ................................ 26

      D.   Plaintiffs Did Not Plead Allegations Sufficient to Establish They Suffered Severe Emotional Distress. ..................................................................................................... 28

   V.   THE INDEMNIFICATION CLAIM CANNOT STAND ALONE. ................................. 30

CONCLUSION ...................................................................................................................... 30

## <u>Table of Authorities</u>

**CASES**

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ..................................................................... 5

*Am. Bonded Warehouse Corp. v. Compagnie Nationale Air France*, 653 F. Supp. 861 (N.D. Ill. 1987) ........................................................................................................................ 16

*Atkins v. Hasan*, No. 15 cv 203, 2015 WL 3862724 (N.D. Ill. June 22, 2015) ................ 25

*Baker v. City of Chicago*, 483 F.Supp.3d 543 (N.D. Ill. 2020) ....................................... 23

*Bank of Am., N.A. v. Knight,* 725 F.3d 815 (7th Cir. 2013) ............................................. 24

*Berg v. BCS Fin. Corp.,* 372 F.Supp.2d 1080 (N.D. Ill. 2005) ......................................... 3

*Blessing v. Freestone,* 520 U.S. 329 (1997) ...................................................................... 6

*Bowen v. Adidas Am. Inc.*, 84 F.4th 166 (4th Cir. 2023) ................................................ 14

*Brokaw v. Mercer Cnty.*, 235 F.3d 1000 (7th Cir. 2000) .................................................. 8

*Brown v. City of Chicago*, 633 F. Supp. 3d 1122 (N.D. Ill. 2022) .................................. 4

*Buchmeier v. City of Berwyn*, No. 14 C 6750, 2015 WL 4498742 (N.D. Ill. July 23, 2015) ....... 26

*Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir. 1994) ...................................................... 4

*Catinella v. County of Cook*, 881 F.3d 514 (7th Cir. 2018) ............................................. 7

*Catledge v. Cook Cnty. Bd. President Stroger*, No. 04 C 7196, 2005 WL 3159242 (N.D. Ill. Nov. 22, 2005) ......................................................................................................... 25

*Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982) .................................. 22

*Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) ................................................. 23

*Charles v. Anna-Jonesboro Nat'l Bank*, No. 22-3261, 2023 WL 6818643 (7th Cir. Oct. 17, 2023) ....................................................................................................................... 5

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ................................................................ 5

*City of Chicago Heights v. Lobue*, 914 F. Supp. 279 (N.D. Ill. 1996) ............................ 13

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ........................................................ 7

*Cort v. Ash*, 422 U.S. 66 (1975) .................................................................................... 5, 6

*Davenport v. Dovgin*, 545 Fed.Appx. 535 (7th Cir. 2013) .............................................. 23

*David v. Vill. of Oak Lawn*, 954 F.Supp. 1241 (N.D. Ill. 1996) ..................................... 6

*Davis v. Ortiz*, 987 F.3d 635 (7th Cir. 2021) ................................................................... 9

*Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069 (1st Dist. 2012) .......... 27, 29

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815 (7th Cir. 2016) ....... 18

*Ewell v. Toney*, 853 F.3d 911 (7th Cir. 2017) .................................................................. 4

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997) ........................................... 15

*Fricano v. Chi. White Sox, Ltd.*, No. 1-10-1978, 2012 WL 6950243 (Ill. App. Ct. Feb. 10, 2012) ....................................................................................................................... 28

*Frison v. Zebro*, 339 F.3d 994 (8th Cir. 2003) ................................................................ 6

*Gamboa v. Velez*, 457 F.3d 703 (7th Cir. 2006) ......................................................... 11, 21

*Gonzalez–Koeneke v. West*, 791 F.3d 801 (7th Cir. 2015) .............................................. 8

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941 (8th Cir. 1999) ................ 13

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..................................................................... 9

*HCB Fin. Corp. v. McPherson*, 8 F.4th 335 (5th Cir. 2021) ........................................... 14

*Heil v. Morrison Knudsen Corp.*, 863 F.2d 546 (7th Cir. 1988) ..................................... 22

*Hernandez v. City of Goshen, Indiana*, 324 F.3d 535 (7th Cir. 2003) ............................ 2

*Hespe v. City of Chicago*, No. 13 cv 7998, 2014 WL 12936099 (N.D. Ill. June 20, 2014) ........ 23

*Hobley v. Burge*, No. 03 C 3678, 2004 WL 2658075 (N.D. Ill. Oct. 13, 2004) ............. 17

*Horton v. Pobjecky*, 883 F.3d 941 (7th Cir. 2018) ........................................................... 23

*Incardone v. Royal Caribbean Cruises, Ltd.*, 2020 WL 2950684 (S.D. Fla. Jan. 18, 2020)........ 27

*J. I. Case Co. v. Borak*, 377 U.S. 426 (1964) ..................................................................... 5

*Jennings v. Auto Meter Prod., Inc.*, 495 F.3d 466 (7th Cir. 2007) ........................................ 20, 21

*Johansson v. Emmons*, No. 609-CV2053-ORL-19KRS, 2010 WL 457335 (M.D. Fla. Feb. 4, 2010) ....................................................................................................................... 6

*Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935 (7th Cir. 2018) ......................................... 30

*Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) ........................................................ 16

*Kernats v. O'Sullivan*, 35 F.3d 1171 (7th Cir. 1994)........................................................... 7

*Knierim v. Izzo*, 174 N.E.2d 157 (Ill. 1961)..................................................................... 29

*Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797 (7th Cir. 2008) ........................... 14

*Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017) ........................................................... 4

*McDonough v. Smith*, 139 S. Ct. 2149 (2019); ................................................................ 3

*McGrath v. Fahey*, 533 N.E.2d 806 (Ill. 1988)................................................................. 26

*Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328 (7th Cir. 2019)............................................. 19

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981).................... 6

*Midwest Grinding Co*, 976 F.2d 1016 (7th Cir. 1992).................................................... 11, 19

*Miller v. Equitable Life Assur. Soc. of the U.S.*, 537 N.E.2d 887 (Ill. App. Ct. 1989) ............... 29

*Montgomery v. Wellpath Med.*, Case No. 3:19-cv-00675, 2022 WL 3589571 (M.D. Tenn. Aug. 22, 2022) .................................................................................................................. 29

*Padilla v. City of Chicago*, 932 F.Supp.2d 907 (N.D. Ill. 2013) ........................................... 29

*Palda v. Gen. Dynamics Corp.*, 47 F.3d 872 (7th Cir. 1995) .......................................... 25, 29

*Paramount Health Sys., Inc. v. Wright*, 907 F.Supp. 1212 (N.D. Ill. 1995)............................. 6

*Parker v. Side by Side, Inc.*, 50 F.Supp.3d 988 (N.D. Ill. 2014).......................................... 28

*Patrick v. City of Chicago*, 974 F.3d 824 (7th Cir. 2020).................................................. 3, 4

*Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir. 1995)........................................ 14

*Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659 (7th Cir. 2005) .......... 18, 19

*Rysewyk v. Sears Holdings Corp., KCD IP, LLC*, No. 15 CV 4519, 2015 WL 9259886 (N.D. Ill. Dec. 18, 2015).......................................................................................................... 24

*Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568 (7th Cir. 2017) ............................... 12

*Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614 (7th Cir. 2012) ......................................... 13

*Schiffels v. Kemper Fin. Servs., Inc.*, No. 91 C 1735, 1993 WL 153850 (N.D. Ill. May 11, 1993) ........................................................................................................................ 10

*SK Hand Tool Corp. v. Dresser Indus. Inc.*, 852 F.2d 936 (7th Cir. 1988)............................... 20

*Steele v. Hosp. Corp. of Am.,* 36 F.3d 69 (9th Cir. 1994) .................................................. 14

*Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983).............................................................. 10

*Thomason v. Nachtrieb,* 888 F.2d 1202 (7th Cir. 1989) ...................................................... 3

*Tucker v. G4S Justice Servs., LLC*, No. 10 C 7058, 2011 WL 867272 (N.D. Ill. Mar. 11, 2011) 26

*Tun v. Whitticker*, 398 F.3d 899 (7th Cir. 2005)................................................................ 7

*United States v. Elliott*, 606 F. Supp. 3d 868 (S.D. Ind. 2022) ........................................... 16

*United States v. Lanier*, 520 U.S. 259 (1997) .................................................................. 8

*United States v. Macari*, 453 F.3d 926 (7th Cir. 2006) ..................................................... 16

*United States v. Matthews*, 505 F.3d 698 (7th Cir. 2007) .................................................. 17

*United States v. Swan*, 250 F.3d 495 (7th Cir. 2001)......................................................... 15

*Vaugh v. Biomat USA, Inc.*, Case No. 20-cv-04241, 2022 WL 1266389 (N.D. Ill. Apr. 28, 2022) ........................................................................................................................ 24, 25

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771 (7th Cir. 1994) ................................ 21

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ...................................................................... 7

*Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148 (1999) .......................................... 28

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) ........................................................ 3

*Wooley v. Jackson Hewitt, Inc.*, 540 F.Supp.2d 964, 972 (N.D. Ill. 2008) ........................... 3, 12

## STATUTES

18 U.S.C. § 1961 ........................................................................................................... passim

18. U.S.C. § 1964(c) .......................................................................................................... 12, 13

42. U.S.C. § 1983 ............................................................................................................. passim

18 U.S.C. § 1510 ................................................................................................................... 16

18 U.S.C. § 1511 ................................................................................................................... 16

18 U.S.C. § 1512 ................................................................................................ 4, 6, 16, 17

18 U.S.C. § 1513 ................................................................................................................... 16

18 U.S.C. § 1519 ..................................................................................................................... 5

18 U.S.C. §§ 1503 ................................................................................................................. 16


735 ILCS § 513-202 .............................................................................................................. 23

745 ILCS § 10/8-101 ....................................................................................................... 22, 23

745 ILCS § 10/2–109 ............................................................................................................ 30

## RULES

Federal Rule of Civil Procedure 12(b)(6) ............................................................................... 1

Federal Rule of Civil Procedure 8 ........................................................................................ 24

## INTRODUCTION

No one likes losing reelection. But Robert O'Dekirk has taken things further than most. He, along with his wife and stepson, filed this lawsuit against a group of perceived political enemies whom he blames for sinking his bid for a third term as the City of Joliet's mayor. All defendants have moved to dismiss.

Plaintiff's response brief is an angry screed which ranges far beyond the facts alleged in the Amended Complaint, offers no case allowing a claim to go forward in a remotely similar scenario, and plays fast and loose with the legal authorities it cites. Perhaps it would be effective as a stump speech or television talk show monologue, but it utterly fails to establish that any Plaintiff has pleaded "a claim on which relief may be granted." Fed. R. Civ. P. 12(b)(6).

In short, Plaintiffs' § 1983 claim is baseless because they do not identify any violation of a federal right. Their attempt to fix this problem by focusing on a conspiracy claim is a dead end because a § 1983 conspiracy claim requires an underlying constitutional violation, and their other longshot theories of liability fare no better. Plaintiffs' RICO claims fail for at least four independent reasons: 1) lack of RICO-recoverable damages; 2) failure to establish a RICO "enterprise;" 3) failure to show RICO predicate acts; and 4) failure to satisfy the "continuity plus relationship" test. Finally, the state law claims are untimely and inadequate as a matter of law. Plaintiffs' Amended Complaint should be dismissed in its entirety and with prejudice.

## ARGUMENT

## I.     PLAINTIFFS CANNOT MAINTAIN AN ACTION UNDER § 1983.

Plaintiffs bluster that Defendants have grossly and intentionally misconstrued their pleading in Count I. In reality, any confusion arises from the Amended Complaint's own vagueness, which attempts to side-step four fatal flaws: (1) that Plaintiffs have not pled a

deprivation of a legally-cognizable federal right; (2) that Roechner, Reid, and Mudron are entitled

to qualified immunity; (3) that Griparis, Hosey, and McFarland are private citizens incapable of

predicating § 1983 liability; and (4) that the cause of action is time-barred.

> **A.     The Amended Complaint Does Not Identify Any Injury to Plaintiffs' Federal Rights, and the Novel Facts and Legal Theories Improperly Advanced in Plaintiffs' Response Cannot Save Their Meritless § 1983 Claim.**

Plaintiffs' Response brief clarifies that Count I is *not* premised on an alleged right to be

free from defamation, emotional distress and mental anguish, or a right to re-election. ECF No. 75

at 10–13, 17–19. If it were, then Count I would fail as a matter of law for the reasons enumerated

in Defendants' motions, as these are not liberties recognized under the Constitution. ECF Nos. 60

at 4–5; 62 at 5–6; 70 at 5; 72 at 3–4. The material question remains: of what federal right were

Plaintiffs allegedly deprived? The definitive answer is, *none*, which is why Plaintiffs' § 1983 claim

requires dismissal *with prejudice*. *See infra* at § I(A).

Under Rule 12(b)(6), the sufficiency of a cause of action must be adduced based on the

pleadings alone. *Hernandez v. City of Goshen, Indiana*, 324 F.3d 535, 538 (7th Cir. 2003)

(affirming dismissal of § 1983 claim where the complaint allegations did not state a violation of

any constitutional rights). Here, Plaintiffs have failed to meaningfully distinguish or refute the

legal precedent which confirms that no cause of action under § 1983 may proceed on the well-pled

facts. For the reasons stated in Defendants' opening briefs and reiterated *infra* at subsection 1,

Count I of the Amended Complaint should be dismissed.

Rather than address Defendants' arguments head-on, Plaintiffs allege new facts not found

anywhere in the Amended Complaint and float novel legal theories. ECF No. 75 at 4–10. Their

citation-devoid assertion that they have "allege[d] conspiracy to fabricate evidence, obstruction of

justice, and conscience shocking violations of due process" as a basis for § 1983 liability is belied

by their own pleading. *Cf. id.* at 10 *with* ECF No. 58. Plaintiffs' arguments at subsections I(A)(1)(a)-(c) of their brief, *see* ECF No. at 4–10, should be stricken as an improper attempt to amend a cause of action in a response to a dispositive motion. *Wooley v. Jackson Hewitt, Inc.*, 540 F.Supp.2d 964, 972 (N.D. Ill. 2008) (citing *Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir. 1989) ("[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Berg v. BCS Fin. Corp.,* 372 F.Supp.2d 1080, 1091 n.8 (N.D. Ill. 2005) (declining to consider new claims contained in response to motion to dismiss)). However, even if this Court considers Plaintiffs' new theories, dismissal with prejudice is still proper, as Plaintiffs plainly fail to establish deprivation of a constitutional or federal right. *Infra* at subsections 2–4.

### 1. Plaintiffs' Section 1983 Claim is Insufficient as a Matter of Law.

Defendants have collectively shown that Plaintiffs cannot establish a cause of action under § 1983 because Plaintiffs were not deprived of a federal right. ECF Nos. 60 at 3–5; 62 at 4–6; 70 at 4–5; 72 at 3–4. Even assuming the truth of the allegations that Defendants coerced Dickinson to make a false police report, that Reid tampered with evidence on Dickinson's phone before turning it over to the Illinois State Police ("ISP"), that Hosey published Dickinson's false allegations in the Herald News, and that Griparis texted Dickinson to "stick to the story," (*see* ECF No. 58 at ¶¶ 34, 57, 65, 74), the well-pled facts that the fabricated police report was never filed with the Joliet Police Department (*id.* at ¶ 50), and that "O'Dekirk was never charged with any crime" (*id.* at ¶ 62), make the previous allegations irrelevant and sound the death knell to Plaintiffs' claim. Plaintiffs' "feelings" that Defendants should be liable for their alleged *intent* and *unsuccessful efforts* to have O'Dekirk criminally prosecuted do not override the binding precedent cited by Defendants. *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019); *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020); *Whitlock v. Brueggemann*, 682 F.3d 567, 580–82 (7th Cir. 2012);

*Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994). As Plaintiffs were not deprived of any constitutional or federal right, they cannot satisfy the elements of § 1983. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017).

### 2. Conspiracy Claims Are Not an Independent Basis of § 1983 Liability.

Plaintiffs' *new* theory of conspiracy to fabricate evidence fails for the same reasons as their well-pled Amended Complaint. Legal precedent is clear: "there must be an underlying constitutional injury or the conspiracy claim fails," both under § 1983 and under Illinois law. *Ewell v. Toney*, 853 F.3d 911, 918 (7th Cir. 2017) (affirming dismissal of a § 1983 conspiracy claim where plaintiff failed to allege an underlying deprivation of a federal right); *see also Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1172–73 (N.D. Ill. 2022) ("Conspiracy claims are not independent bases of § 1983 liability. They derive from an underlying constitutional violation."). As a result, Plaintiffs cannot align themselves with the plaintiff in *Patrick v. City of Chicago*, who, as a result of the defendants' alleged conspiracy to fabricate evidence, was found guilty, sentenced to life in prison, and served 19 years before his conviction was vacated. 213 F. Supp. 3d 1033, 1040 (N.D. Ill. 2016). Once again, § 1983 is a civil statute to redress injuries to federally-protected rights. It is unavailable to parties, such as Plaintiffs, who have not experienced a deprivation of a recognized federal liberty. Therefore, Defendants cannot be held liable for conspiracy under § 1983.

### 3. The Cited Criminal Statutes Do Not Provide a Private Cause of Action.

Next, Plaintiffs' concoct new theories of § 1983 liability by alleging Defendants' violated the following *criminal* statutes: 18 U.S.C. §§ 1512 ("Tampering with a witness, victim, or an

informant"), 1518 ("Obstruction of criminal investigations of health care offenses"),[1] and 1519 ("Destruction, alteration, or falsification of records in Federal investigations and bankruptcy"). ECF No. 75 at 7–9. Plaintiffs' entire argument focuses on *criminal* case law without citing to a single case from the Seventh Circuit to support their contention that these statutes are applicable regardless of whether a federal investigation was imminent at the time of the alleged obstruction of justice. *Id.*

Most glaringly, not one of the cited statutes provides for a civil remedy. "Only Congress can create a private right of action to enforce federal law." *Charles v. Anna-Jonesboro Nat'l Bank*, No. 22-3261, 2023 WL 6818643, at *2 (7th Cir. Oct. 17, 2023), *reh'g denied,* No. 22-3261, 2023 WL 7411556 (7th Cir. Nov. 9, 2023) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). The Supreme Court "has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1975)). Plaintiffs make no attempt to meet their burden of showing a private right of action under these statutes is permissible or otherwise "necessary to make effective the congressional purpose." *Id.* at 317 (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)).

Nor could they. Case after case in this district (to say nothing of elsewhere) has dismissed claims similar to those advanced by Plaintiffs and found no private right of action arising from the criminal statutes they cite. *See, e.g., Charles*, 2023 WL 6818643, at *2 (affirming dismissal with prejudice of civil claim brought under 18 U.S.C. § 1519, finding no private right of action).[2]

---

[1] Plaintiffs cite to this section without any further development. As there are no "health care offenses" alleged in the Amended Complaint, 18 U.S.C. § 1518 is entirely irrelevant to this lawsuit.

[2] *See also, Szplett v. Kenco Logistic Servs., LLC*, No. 19 C 2500, 2020 WL 1939388, at *3 (N.D. Ill. Apr. 22, 2020) (dismissing claims for obstruction of justice under 18 U.S.C. §§ 1001 and 1512, citing decisions across multiple Circuits Courts confirming no private right of action under these statutes); *Nelson v. Chertoff*, No. 07 C 2991, 2008 WL 4211577, at *4 (N.D. Ill. Sept. 10, 2008) (dismissing claims under 18 U.S.C. § 1512(b)(1) and (2)(A), finding

Additionally, even if Plaintiffs had pled sufficient facts to maintain an obstruction of justice claim—which they did not—"not every federal statute creates enforceable rights that plaintiff can assert under section 1983." *David v. Vill. of Oak Lawn*, 954 F.Supp. 1241, 1245, n.6 (N.D. Ill. 1996) (citing *Paramount Health Sys., Inc. v. Wright*, 907 F.Supp. 1212, 1217 (N.D. Ill. 1995)). This is because, "[i]n order to seek redress through § 1983, [ ] a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.*" *Blessing v. Freestone,* 520 U.S. 329, 340 (1997). "[A] bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone" does not create a cause of action. *Cort,* 422 U.S. at 80; *see also Frison v. Zebro,* 339 F.3d 994, 999 (8th Cir. 2003) ("[I]t is well-settled that criminal statutes will rarely survive § 1983 analysis").

Plaintiffs do not cite, and defense counsel have not located, any Seventh Circuit authority supporting the contention that 18 U.S.C. §§ 1512, 1518 or 1519 create a federal right which would support a § 1983 claim. On the contrary, numerous district courts in sister circuits have expressly declined to allow such actions to move forward. *See, e.g., Johansson v. Emmons*, No. 609-CV2053-ORL-19KRS, 2010 WL 457335, at *8 (M.D. Fla. Feb. 4, 2010) (citing *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 19 (1981) in concluding, "[e]ven if 18 U.S.C. § 1512 created a federal right, Section 1983 is not a proper remedy for a violation of that statute where Congress foreclosed private enforcement of the statute in the enactment itself").[3]

---

not a single "decision holding that the criminal witness tampering statute carries an implied private right of action"); *Chavin v. Cole Taylor Bank,* 06 C 6856, 2007 WL 528374, at *2 (N.D. Ill. February 14, 2007) (noting that Title 18 contains criminal statutes and finding that it had no basis for inferring a private right of action); *Chi. Title & Land Tr. Co. v. Rabin,* No. 11 CV 25, 2012 WL 266387, at *5 (N.D. Ill. Jan. 20, 2012) (stating "criminal statutes governing conspiracies against civil rights and deprivation of rights under color of law . . . do not provide for a private right of action" and collecting cases).

[3] *See also, Blake v. Williams*, 2023 WL 8274409, at *4 (D. Kan. Nov. 30, 2023) (dismissing plaintiff's § 1983 claim which was predicated on 18 U.S.C. § 1512, noting that plaintiff was improperly attempting to enforce the criminal statute without authority); *Cooper-Keel v. Keel-Worrell*, No. 1:22-CV-1236, 2023 WL 3871026, at *8 (W.D. Mich. Apr. 14, 2023), *report and recommendation adopted in pertinent part,* No. 1:22-CV-1236, 2023 WL 3300986 (W.D. Mich. May 8, 2023) (finding, "[d]ismissal of Plaintiff's claim based on 18 U.S.C. § 1512 (tampering or threatening a

Plaintiffs' argument that a violation of criminal statutes regarding obstruction of justice should serve as a basis for § 1983 liability is baseless. Their approach of throwing out poorly-researched, scatter-shot arguments should be swiftly rejected.

### 4. Plaintiffs Have Not Set Forth a Due Process Claim Under § 1983.

Plaintiffs' "third alternative basis for 1983 liability," improperly advanced for the first time in their Response brief, argues that Defendants exhibited an "abuse of power [that] is absolutely conscience shocking" in violation of due process. ECF No. 75 at 9. "[T]he scope of substantive due process is very limited." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). "The Supreme Court has repeatedly cautioned against expanding the contours of substantive due process." *Catinella v. County of Cook*, 881 F.3d 514, 518 (7th Cir. 2018). Importantly, "every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994). Thus, "[t]he first step in analyzing a § 1983 claim is to identify the specific constitutional right allegedly infringed." *Id.*; *see Washington*, 521 U.S. at 721 (cautioning, "we have required in substantive due process cases a careful description of the asserted fundamental liberty interest"); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 855 (1998) (cited by Plaintiffs at ECF No. 75 at 9–10, where an officer allegedly deprived an individual of his right to life when he struck and killed him during a high-speed chase, but the Court affirmed there was no § 1983 liability under a shocks the conscience theory).

---

witness) is also proper, whether brought in conjunction with his Section 1983 claim or as an independent *claim*," as, "Section 1512 is a criminal statute that does not authorize a private right of action"); *Ghost Bear v. S. Dakota Dep't of Corr.*, No. CIV. 11-5051-JLV, 2011 WL 3608569, at *2 (D.S.D. Aug. 16, 2011) (holding, "[t]here is no private right of redress or private suit under § 1983 or under an implied right of action for violation of 18 U.S.C. §§ 1512 or 1513").

Plaintiffs' attempt to allege a substantive due process claim fails for the same reasons set forth in Defendants' motions based on the facts actually pled in the Amended Complaint: Plaintiffs have not identified a deprivation of liberty secured by the Constitution of federal law. *Id.*; *see* ECF Nos. 60 at 4–5; 62 at 5–6; 70 at 5; 72 at 3–4; *supra* at § I(A)(1). Plaintiffs have simply not met their burden of pleading a legally viable cause of action under § 1983.

Plaintiffs' new theory of recovery is also improper, given the well-established notion that "substantive due process should not be called upon when a specific constitutional provision protects the right allegedly infringed upon." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1017–18 (7th Cir. 2000) (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (confirming, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"). Even if Plaintiffs had pled a viable claim for evidence fabrication—which they have not—the law requires they proceed under the Due Process Clause of the Fourteenth Amendment, rather than a general substantive due process claim.

For the reasons set forth above and in Defendants' opening briefs, dismissal *with prejudice* on Count I is proper as to all Defendants as any further attempt at amendment would be futile. *Gonzalez–Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (confirming, "[d]istrict courts . . . have broad discretion to deny leave to amend where . . . the amendment would be futile").

### B. Defendants Roechner, Reid and Mudron are Entitled to Qualified Immunity.

As detailed above and in Defendants' motions, Plaintiffs have also not met their burden of proving a cognizable injury under § 1983. Plaintiffs contend they were injured by the existence of a conspiracy to deprive them of rights, but they still have failed to identify any constitutional or federal rights which the alleged conspiracy deprived them of. In any event, Defendants Roechner,

Reid and Mudron, who are each sued in their capacities as public officials, are therefore entitled to qualified immunity where, as here, Plaintiffs have failed to establish that these Defendants violated any of Plaintiffs' clearly-established federal rights. *Est. of Davis v. Ortiz*, 987 F.3d 635, 638 (7th Cir. 2021); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

### C. Defendants Griparis, Hosey and McFarland are Private Citizens and Beyond the Reach of § 1983 Based on the Facts Pled.

Plaintiffs agree that to hold private citizens, here Defendants Griparis, Hosey and McFarland, liable under § 1983, Plaintiffs must first plead facts establishing that these Defendants conspired with a public employee *to deprive Plaintiffs of their constitutional rights*. ECF No. 75 at 13. What Plaintiffs continue to overlook is they have not established that Defendants acted in concert to deprive Plaintiffs of a right recognized under § 1983. Plaintiffs allege that Defendants "agreed and conspired to fabricate false claims against Plaintiff, O'Dekirk" to have him charged with a crime. However, the police report created by Reid was never filed. ECF No. 58 at ¶¶ 30, 50. No criminal charges were ever brought against O'Dekirk. *Id.* at ¶ 62. And there was no constitutional injury to Plaintiffs.

Hosey's subsequent act of publishing the allegations of the police report in the Herald News was performed "with the *sole intent and purpose* of *damaging O'Dekirk's public image*," (*id.* at ¶ 67 (emphasis added)), and "to either get O'Dekirk *removed as mayor* or *lose the next election.*" *Id* at ¶ 68 (emphasis added). As established, the rights to be free of defamation and to be re-elected are not federal liberties. *See supra* at § I. Further, Plaintiffs plead no consequences as a result of Griparis's alleged texts to Dickinson to "stick to the story," nor the purpose behind these messages. ECF No. 58 at ¶ 74. There are plainly no allegations that any concerted actions by Griparis, Hosey and McFarland (nor any of the other Defendants) deprived Plaintiffs of any federal

rights. Plaintiffs' conspiracy claims are therefore factually insufficient for liability against the private citizen Defendants.

### D.    Plaintiffs' § 1983 Claim Is Time-Barred.

Plaintiffs misstate Defendants' statute of limitations defense. Defendants' position, based on Seventh Circuit precedent, is that Plaintiffs' alleged § 1983 claim accrued when Plaintiffs knew or should have known that their constitutional rights were violated—*i.e.*, when the substance of the allegedly false police report was published on November 2, 2020. ECF Nos. 60 at 5–6; 62 at 8–9; *but see* ECF No. 75 at 15 (falsely arguing, "Defendants claim that the statute of limitations should start running from the date the Defendants plan was agreed to"). Plaintiffs cannot overcome this precedent by relying on factually distinguishable case law. ECF No. 75 at 16 (citing *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983) (where the court found the copyright statute of limitations was tolled due to defendants' *fraudulent concealment* of the infringement); and *Schiffels v. Kemper Fin. Servs., Inc.*, No. 91 C 1735, 1993 WL 153850, at *11 (N.D. Ill. May 11, 1993) (involving a conspiracy to defame)). Nor can Plaintiffs supplement their pleading in the Amended Complaint via their Response brief to try and establish a continuing tort claim to defeat a motion to dismiss.

Plaintiffs' Response adds facts and unsubstantiated conclusions that flunk *Iqbal*'s "plausibility" test. Specifically, they ask this Court to presume, "[u]p to and including some time in 2022 the Defendants were still trying to get O'Dekirk charged and convicted of this fabricated crime he did not commit," absent citation to any supporting facts. ECF No. 75 at 16. First, the allegation against Griparis simply states, "Nancy at various times in 2021 and 2022 texted Dickinson telling him in essence to 'stick to the story.'" ECF No. 58 at ¶ 74. Plaintiffs jump from this vague summary of innocuous texts on unspecified dates to speculate that "Griparis is still

trying to accomplish the scheme of getting O'Dekirk arrested." ECF No. 75 at 16. How so? Plaintiffs confirmed the allegedly fabricated police report was never filed. ECF No. 58 at ¶ 50. Second, the Amended Complaint alleges, "Hosey has published a number of articles criticizing O'Dekirk over the years in the Herald News." *Id.* at ¶ 69. Plaintiffs, again, misrepresent their pleading by arguing in their Response that "Hosey was continuing on with the scheme publishing news of Plaintiffs' supposed crimes until May 7, 2022." ECF No. 75 at 16.

As established, Plaintiffs cannot revise their factually-insufficient Amended Complaint by raising new facts in their Response to Defendants' motions to dismiss. *Hernandez*, 324 F.3d at 538; *Wooley*, 540 F. Supp. 2d at 972. Plaintiffs' novel claims are unsupported by their pleading, and should be disregarded. Based on the four corners of the Amended Complaint, the purported constitutional violation was Defendants' fabrication of criminal claims against O'Dekirk, and Plaintiffs were aware of those actions on November 2, 2020, but waited more than two years to bring this lawsuit. Even if Plaintiffs had pled a legally viable claim under § 1983, which they have not, it would still be time-barred as a matter of law.

## II.   PLAINTIFFS' DEFENSE OF THEIR RICO CLAIMS FAILS.

Plaintiffs' brief spends twelve pages defending their RICO claims but never cites a single case allowing a civil RICO claim under remotely similar facts. ECF No. 75 at 20–31. This is no surprise given the chasm between RICO's purpose of targeting long term organized crime, and Plaintiffs' theory, which is that O'Dekirk "lost reelection" because "corruption" denied him "a fair and honest election." ECF No. 58 at ¶¶ 79, 86. Federal courts have been decrying "widespread abuse of civil RICO" for decades. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992); *see also Gamboa v. Velez*, 457 F.3d 703, 710 (7th Cir. 2006). Whatever else it covers, RICO is not a tool to challenge electoral defeats.

Plaintiffs insinuate that if they cannot bring RICO claims, the Defendants will get away with their alleged misdeeds. ECF No. 75 at 22–23. But that ignores the availability of actions alleging a conspiracy to commit a tort recognized under state or common law (*e.g.,* conspiracy to defame). RICO is not synonymous with a garden variety conspiracy claim, is not a catchall to cover "all instances of wrongdoing, and is "not a substitute for every time-barred tort or civil rights action." *Gamboa*, 457 F.3d at 705, 710. Rather, it has a specific purpose and specific requirements. If unlawful aims were enough to create an "enterprise," every conspiracy to commit an objective would be a RICO case. This is not the law. Plaintiffs have not pled facts to survive dismissal of their RICO action.

### A. Plaintiffs Cannot Establish Any Damages Recoverable Under RICO.

The Defendants' initial briefs highlighted that RICO only permits recovery for damages to "business or property," and not for personal injuries. 18 U.S.C. § 1964(c). Plaintiffs initially insist this does not matter because damages are secondary to their substantive claims. EF No. 75 at 3. This is backwards. Damage to "business or property" is a "standing" requirement and thus a *prerequisite* for any RICO claim. *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 587 (7th Cir. 2017).

Plaintiffs' only other response comes in two paltry paragraphs supported by a single out of circuit case. There, Plaintiffs claim that lost "potential clients" to O'Dekirk's law practice qualify as damage to "business" under § 1964(c). ECF No. 75 at 29. A threshold problem with this response is that the *Amended Complaint* never mentions O'Dekirk's law practice, let alone lost potential clients. *See, e.g, Wooley*, 540 F. Supp. 2d at 972 (a plaintiff may not assert new facts in response to a dispositive motion to avoid dismissal). It only alleges personal injuries, such as O'Dekirk "los[ing] reelection," "lost productiveness," "lost political advancement," "lost wages"

from no longer holding elected office, "pain and suffering," and "great emotional distress." ECF No. 58 at ¶¶ 79–81, 95, 97, 100. Plaintiffs never explain how these damages are recoverable under RICO.[4] But even if Plaintiffs had alleged "lost potential clients" to O'Dekirk's law practice, Plaintiffs would still lack a cognizable RICO injury.

First, any harm to O'Dekirk's law practice is indirect and downstream from the harm to his reputation. Thus, it is still a personal injury for which no recovery is allowed under RICO. Like O'Dekirk, the plaintiff in *Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614 (7th Cir. 2012), alleged that the defendants' false public statements deterred potential clients. The Seventh Circuit rejected the argument, holding that such losses flowed from *reputational* harm, and "alleged reputational injury is personal, and that is true even if it could result in a loss of income." *Id.* at 623. Other courts agree: damage to one's business or personal reputation is a personal injury not covered by § 1964(c), even if it leads to lost business revenue. *See, e.g.*, *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999); *City of Chicago Heights v. Lobue*, 914 F. Supp. 279, 285 (N.D. Ill. 1996).

That is exactly the case here. Under *Santana*, only *direct* interference with the plaintiff's "promised or contracted-for work" can be injury to "business or property" for purposes of RICO. *Santana*, 679 F.3d at 623. Plaintiffs never allege that any Defendant directly contacted O'Dekirk's actual or potential clients and caused them to hire someone else.

Second, any harm from "lost potential clients" is too speculative to permit recovery. The Fifth Circuit has held RICO standing requires "a concrete financial loss" of one's "own money, and not a mere injury to a valuable intangible property interest." *HCB Fin. Corp. v. McPherson*, 8

---

[4] O'Dekirk has thus waived any contention that he can recover damages for anything besides lost potential clients under RICO. And, since the other Plaintiffs, O'Dekirk's wife and stepson do not operate a law practice, they have waived any RICO claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument waives the issue).

13

F.4th 335, 344 (5th Cir. 2021) (citations omitted). The Ninth Circuit agrees. *Steele v. Hosp. Corp. of Am.,* 36 F.3d 69, 70 (9th Cir. 1994). The Fourth Circuit put it well: "injury to a 'mere expectancy' or the loss of an opportunity is insufficient" for a RICO claim. *Bowen v. Adidas Am. Inc.*, 84 F.4th 166, 177 (4th Cir. 2023). Although the Seventh Circuit has not addressed this issue, this Court can and should follow the national consensus.

According to Plaintiffs' own brief, O'Dekirk has, at most, lost *potential* clients. ECF No. 75 at 29. That is a textbook *expectanc*y interest and lost opportunity, not a "concrete financial loss" of "his own money." *HCB Fin. Corp.*, 8 F.4th at 344. That alone justifies dismissing Plaintiffs' RICO claims.

### B.  Plaintiffs' Allegations Do Not Establish a RICO "Enterprise."

Even if Plaintiffs could show injury to business or property, they cannot show an "enterprise," which RICO also requires. Plaintiffs' main argument is that the individual Defendants created "an association in fact." ECF No. 58 at ¶ 24. But *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995), teaches that a RICO "enterprise must be more than a group of people who get together to commit a pattern of racketeering activity." *Id.* at 645 (internal quotation and citation omitted). That is what differentiates RICO from garden-variety conspiracy.

Here, all that Plaintiffs allege is that Defendants "agreed to pursue" the same goal and acted on that agreement. ECF No. 75 at 30. Moreover, "a conspiracy is not a RICO enterprise unless it has some enterprise-like structure, such as that of a cartel," like "OPEC." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 804 (7th Cir. 2008). As in *Limestone*, there is no allegation here of a "*structure*" beyond the alleged agreement itself—nothing of "a system of governance" or any "hierarchy" or "headquarters" or "a budget, records, or any other indicator" of an organization. *Id.*

14

Plaintiffs' fallback is to treat either the *Joliet-Herald News* or the City of Joliet itself as RICO enterprises. ECF No. 75 at 31. This theory collides with the principle that "an employer and its employees cannot constitute a RICO enterprise." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997). All of the Defendants, save for Hosey and Griparis, are employees of the City, which is also a Defendant. Moreover, Plaintiffs must show that each Defendant "participated in the operation or management of the [alleged] enterprise itself." *United States v. Swan*, 250 F.3d 495, 498 (7th Cir. 2001). Thus, the *Herald News* cannot be the enterprise because nothing in the Amended Complaint shows that anyone besides Hosey had any role in managing it. Similarly, the City cannot be the enterprise, not merely because it employs the other Defendants but because the Amended Complaint does not show how the Defendants (especially Hosey and Griparis) managed the City. Ironically, the person with the greatest role in the "operation and management," *Swan*, 250 F.3d at 498, was O'Dekirk himself, because he was the elected chief executive. That underscores just how odd a theory Plaintiffs are asking this Court to accept. In short, they cannot support this element of their RICO claim.

### C. Plaintiffs' Attempt to Show "Predicate Acts" Under RICO Falls Short.

A civil RICO claim also requires at least two "predicate acts." 18 U.S.C. § 1961(1). The Amended Complaint purports to list seven (ECF No. 58 at ¶¶ 70–76), but with little explanation on *how* they fit under § 1961(1). Plaintiffs' brief clarifies their position but lacks any persuasive force.

Instead, Plaintiffs make a perfunctory assertion that acts 4 and 6, which involve publishing allegedly defamatory news articles, qualify as federal wire fraud. ECF No. 75 at 28. Federal wire fraud *can* be a RICO predicate act, but the wire fraud statute does not criminalize all "corrupt acts" by public employees, only "*property* fraud." *Kelly v. United States*, 140 S. Ct. 1565, 1571, 1574

(2020) (emphasis in original). Defendants' opening briefs noted that Plaintiffs failed to show any fraud aimed at property and thus mail or wire fraud as a predicate act. *See* ECF No. 70 at 7–8. Plaintiffs' Response utterly ignores this point and thus waives the issue. *Bonte*, 624 F.3d at 466. The only case Plaintiffs cite is *Am. Bonded Warehouse Corp. v. Compagnie Nationale Air France*, 653 F. Supp. 861 (N.D. Ill. 1987). However, that case dealt with an attempt to "obtain an absolute vertical monopoly" and the accompanying profits, so there was no issue about whether property was at stake. *Id.* at 866. As such, that case is irrelevant and Plaintiffs' theory that acts 4 and 6 are wire fraud is baseless.

Plaintiffs' main argument is that alleged predicate acts 1–3, 5, and 7 violated 18 U.S.C. §§ 1503 and 1510–13. ECF No. 75 at 28. This fares no better than their wire fraud theory:

- Section 1503 requires "a *pending* judicial proceeding." *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006) (emphasis added);

- Section 1510 is limited to alleged obstruction of investigations "relating to a violation of any criminal statute of the United States." 18 U.S.C. § 1510(a),(b);

- Section 1511 requires "intent to facilitate an illegal gambling business." 18 U.S.C. § 1511(a); and

- Section 1513 requires murder, bodily injury, damage to tangible property, or an attempt to do one of those things. 18 U.S.C. § 1513(a)(1), (b).

No such link to any of these things appears in Plaintiffs' Amended Complaint or brief. Rather, Plaintiffs abridge each statute's requirements in a set of terse and misleading parentheticals, all of which omit the specific requirements of each statute. ECF No. 75 at 28. Thus, Plaintiffs fail to show violations §§ 1503, 1510, 1511, and 1513 as RICO "predicate acts."

This leaves § 1512, which is a broad statute dealing with tampering with witnesses and documents. But § 1512 demands a significant link to a *federal* proceeding. *United States v. Elliott*, 606 F. Supp. 3d 868, 876 (S.D. Ind. 2022); *Hobley v. Burge*, 2004 WL 2658075, at *11 (N.D. Ill.

16

Oct. 13, 2004). Plaintiffs apparently agree because they claim to have satisfied these requirements. ECF No. 75 at 31.

However, the Amended Complaint never alleges any federal proceedings. Plaintiffs' brief makes ambiguous references to an "FBI investigation" (*id.*), but there is no allegation that any Defendant communicated with any federal agent or contemplated any federal proceeding. Rather, Plaintiffs' only concrete allegations concern *Illinois* matters, specifically, a forensic investigation of Dickinson's phone by the Illinois *State* Police ("ISP") (ECF No. 58 at ¶ 53), and a subpoena to the ISP, (*Id.* at ¶ 88).

As Plaintiffs rightly note, a federal proceeding need not be pending in order for someone to violate § 1512. ECF No. 75 at 8, 31. But "it is one thing to say that a proceeding need not be pending or about to be instituted at the time of the offense, and quite another to say a proceeding need not even be foreseen." *United States v. Matthews*, 505 F.3d 698, 708 (7th Cir. 2007) (internal citations omitted). Nothing in the Amended Complaint makes it "plausible," as *Iqbal* requires, that any Defendant would have "foreseen" any federal proceeding.

Other plaintiffs have tried to parlay allegations similar to those asserted here about "tampering with witnesses," covering up misconduct, and "working to obstruct justice and procure false convictions" into a RICO case. *Hobley*, 2004 WL 2658075 at *10. But allegations that "some potential future federal proceedings may have been adversely effected by [d]efendants' scheme" did not suffice. *Id.* at *11. Instead, Plaintiffs must show that Defendants "*feared* that a federal proceeding had been or might be instituted," and they were trying to obstruct it. *Id.* Like the *Hobley* plaintiff, Plaintiffs here cannot do that, so § 1512 cannot be the basis for any "predicate act."

17

**D.** **Plaintiffs Fail the "Continuity Plus Relationship" Test For a "Pattern" of Racketeering Activity.**

Plaintiffs' position on this point is self-contradictory. On the one hand, Plaintiffs protest that the phalanx of case law the Defendants cited, which hold that schemes with a single focus and natural ending point never qualify as a "pattern," are irrelevant because they only apply to "open ended" continuity, not closed ended, which Plaintiffs are primarily alleging. ECF No. 75 at 20. On the other hand, Plaintiffs insist that Defendants might repeat their conduct in the future, which is the hallmark of open-ended continuity. *Id.* at 22–23. Plaintiffs cannot have it both ways. If Plaintiffs are alleging a risk of repeated conduct, Plaintiffs *are* positing open-ended continuity, and thus their attempt to quarantine off (since they cannot refute) cases holding that schemes with "a natural ending point" always flunk RICO's "pattern" requirement withers on the vine. *See Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc*., 831 F.3d 815, 827–28 (7th Cir. 2016) (so holding); *see also* ECF No. 58 at ¶ 27 (alleging Defendants' goal was to destroy O'Dekirk's political career).

Since an open-ended continuity theory is dead on arrival, Plaintiffs' only remaining option is closed-ended continuity. This, however, is another dead end. For one thing, Plaintiffs are wrong that the "single scheme with a natural end point is never enough" holdings solely apply to open-ended continuing. *Cf.* ECF No. 75 at 20. Both *Gamboa* and *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659 (7th Cir. 2005), which Defendants cited for the same principle, rejected closed-ended continuity as well as open-ended continuity on this basis. *Gamboa*, 457 F.3d at 709–10; *Roger Whitmore's*, 424 F.3d at 673–74; *see also Empress Casino*, 831 F.3d at 828 (noting that plaintiffs in that case admitted they did not show closed-ended continuity).

Additionally, even if one analyzes closed-ended continuity factor by factor and sets aside the Seventh Circuit's repeated holdings that "a natural end point forecloses continuity," every

factor cuts against closed continuity here. As Plaintiffs' brief notes, those factors are "'the number and variety of predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries.'" ECF No. 75 at 24 (quoting *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 342 (7th Cir. 2019).

Start with the number of predicate acts. It is low. The Amended Complaint lists seven but the last, noncompliance with a subpoena, deals with actions by a third party (the ISP). ECF No. 58 at ¶¶ 76, 88–90. It can safely be ignored, which leaves six. The Seventh Circuit has repeatedly said that "a few" or "a handful" of predicate acts weighs strongly against closed ended continuity. *Menzies*, 943 F.3d at 475; *Roger Whitmore's*, 424 F.3d at 674. This starts Plaintiffs' theory off on very thin ice.

Next, there is duration. The Seventh Circuit has "not hesitated to find that closed periods of several months *to several years* did not qualify" for closed-ended continuity. *Roger Whitemore's*, 424 F.3d at 673; *see also Menzies*, 943 F.3d at 342 (no continuity when scheme allegedly lasted three years); *Midwest Grinding Co*, 976 F.2d at 1024 (7th Cir. 1992) (citing additional cases). Plaintiffs concede that without the alleged subpoena noncompliance, which, again, is irrelevant because it is based on the actions of a third party, the timeline here is only 19 months. ECF No. 75 at 19. This is another strike against continuity.

The "number of victims" with cognizable RICO injuries is also low (and likely non-existent). Recall that RICO only allows recovery for injuries to *business* or *property*. Thus, even giving Plaintiffs' the benefit of the doubt by setting aside the Defendants' arguments earlier in this section, there is only O'Dekirk and perhaps Dickinson. Plaintiffs' claim that "the people of Joliet" were injured due to the lack of a "fair and honest election" is specious. ECF No. 58 at ¶ 86. This kind of vague, diffuse harm is phony makeweight, and courts know it. For example, in *Jennings*

*v. Auto Meter Prod., Inc.*, 495 F.3d 466, 475 (7th Cir. 2007), the plaintiff alleged "a vast array of victims and injuries," including taxpayers, customers, and the general public, who lost "honest government services." The Seventh Circuit understood that the case was fundamentally a patent dispute and the expanded "victim list" merely a "a different way to characterize the damage Jennings has suffered from his inability (thus far) to get his utility patent." *Id.* at 476; *see also SK Hand Tool Corp. v. Dresser Indus. Inc.*, 852 F.2d 936, 942 (7th Cir. 1988) (rejecting "fraud on the public" theory).

Plaintiffs are trying the same maneuver. Their allegations of harm to the public, of "giving false information to the voters to ensure Plaintiff [O'Dekirk] loses his bid for reelection" (ECF No. 75 at 27), is just "another way to characterize" the "harm" O'Dekirk suffered in not winning reelection. *Jennings*, 495 F.3d at 476.

Finally, there is the question of "separate schemes." This case deals with one scheme. Every alleged act was focused on a single, specific goal—taking out a political rival. This is precisely what the Amended Complaint alleges. ECF No. 58 at ¶¶ 25–27, 30–32. Plaintiffs themselves allege that Defendants' "sole intention" was to hurt O'Dekirk's reputation and political career because they saw him as "a political obstacle." *Id.* at ¶¶ 30, 32. Plaintiffs twice try to evade the consequences of their own allegations by attempting to spin each separate alleged *action* as a different *scheme*. ECF No. 75 at 21–22, 27. This is no more logical than saying that a pitcher has separate goals merely because he throws a fastball on one pitch, a curveball on the next, and a slider on the third. There is only one goal—getting the batter out.

Indeed, courts routinely see through plaintiffs' efforts to inflate the number of schemes at issue by such artificial divisions. In *Gamboa*, for example, the court found that the numerous "separate" schemes the plaintiffs alleged were in reality all part of one alleged frame-up. 457 F.3d

at 707–08. Likewise, in *Jennings*, the court rejected the plaintiff's allegations of multiple schemes because the case was "really about" a single patent dispute. 495 F.3d at 476; *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994) (rejecting plaintiff's view that defendants engaged in "five" schemes, because they "all revolve[d] around" a single goal).

Finally, all the factors should be interpreted in a "commonsense" manner and never be allowed "to over-ride the big picture." *Gamboa*, 457 F.3d at 709. Here, the factors and the big picture point in the same direction. Even on the *very* generous assumption that Plaintiffs' RICO claims get this far, they flounder on the "pattern" requirement. Count II should be dismissed with prejudice, as any attempt at amendment would be an exercise in futility. *Gonzalez–Koeneke*, 791 F.3d at 807.

## III. PLAINTIFFS' CLAIMS FOR WILLFUL AND WANTON CONDUCT ARE BASELESS.

Plaintiffs' justification for their "willful and wanton" claim in Count VI is incoherent. They initially insist that it is not a defamation claim. ECF No. 75 at 32. But on the next page, they flip-flop and claim their "resulting damage sounds in defamation." *Id.* at 33. Which is it? This is a verbal shell game, as Plaintiffs shift away from defamation in order to dodge the statute of limitations, but back to defamation in order to recover damages. That is not the foundation for a valid legal claim. Beyond that, there are at least three other problems with this count.

First, Plaintiffs highlight that "willful and wanton" conduct is regarded as an aggravated form of negligence, requiring the standard elements of negligence plus a higher level of culpability. This is true, and nothing in the Defendants' briefs contended otherwise. But Plaintiffs' own framing only highlights their need to prove *causation*, which they cannot do. Their fundamental theory, that the Defendants' actions *caused* O'Dekirk to lose the election and thus all the other resulting harms, is too speculative as a matter of law. Indeed, tort law, unlike criminal law, does

not punish purely preparatory conduct. *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982). For wrongdoing to be actionable as a tort there must be an injury. *Id*. As the Seventh Circuit put it, "a tort is not wrongful conduct in the air; the arrow must hit its mark … Until there is hurt, there is no tort." *Heil v. Morrison Knudsen Corp*., 863 F.2d 546, 550 (7th Cir. 1988). Plaintiffs' themselves describe their "willful and wanton" claim as based on "*attempting* to have Plaintiff [O'Dekirk] imprisoned." ECF No. 75 at 32. But O'Dekirk *wasn't* imprisoned, or even charged and arrested. This dooms their claim, because willful and wanton conduct cannot be based on attempts.

Second, the claims for willful and wanton conduct are untimely. The statute of limitations for *all* state law claims against municipalities and their employees is one year. 745 ILCS § 10/8-101. Plaintiffs even concede that their willful and wanton claim against the City is time-barred. ECF No. 75 at 34. But they oddly refuse to admit the same with respect to individual defendants, *even though* they *admit* that "local governmental entities and their employees" benefit from the one-year statute of limitations, (*id.*), *and* they insist that every Defendant is either a local government entity or its employee (ECF No. 58 at ¶ 92). Plaintiffs, having conceded both premises, cannot deny the conclusion that their claim is untimely as to *all* defendants. Two plus two equals four whether or not Plaintiffs say so out loud.

Third and finally, Plaintiff's' "willful and wanton" claims are based on the same alleged actions as their § 1983 claims. *Cf.* ECF No. 75 at 4–9 (alleging § 1983 claims for conspiracy to fabricate evidence, obstruction of justice, and due process violations, and organizing their brief with subheadings so titled) *with, id.* at 33 (alleging willful and wanton claims based on "conspiracy to fabricate evidence, obstruct justice, and violate due process). These claims are therefore meritless for the reasons laid out in the previous section dealing with the § 1983 claims. *See supra*

at § I. Indeed, the Seventh Circuit has held that the Tort Immunity Act's "willful and wanton" standard is functionally indistinguishable from the Eighth Amendment's "deliberate indifference" standard. *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001). Thus, conduct that does not violate the federal constitution is by definition *not* willful and wanton. *See, e.g.*, *Horton v. Pobjecky*, 883 F.3d 941, 954 (7th Cir. 2018). This count should be dismissed with prejudice.

## IV.      PLAINTIFFS' IIED CLAIMS ARE FUTILE.

As to their IIED claim, Plaintiffs' Response repeatedly misses every mark and attempts to remedy their vague, inartful pleading with logical fallacies and improper supplemental averments outside the four corners of the Amended Complaint.

### A.  The Statute of Limitations Indeed Bars Plaintiffs' IIED Claims.

Normally, IIED claims carry a two-year statute of limitations. *See* 735 ILCS § 513-202. However, since, as noted in the previous section regarding "willful and wanton" conduct, Plaintiffs themselves insist that every Defendant is either a local government entity or its employee (ECF No. 58 at ¶ 92), the one-year statute of limitations in 745 ILCS § 10/8-101 applies. *See e.g.*, *Baker v. City of Chicago*, 483 F.Supp.3d 543, 560 (N.D. Ill. 2020); *Davenport v. Dovgin*, 545 Fed.Appx. 535, 538 (7th Cir. 2013). Moreover, under Illinois law, a continuing tort "is occasioned by continuing unlawful acts and conduct." *Hespe v. City of Chicago*, No. 13 cv 7998, 2014 WL 12936099, at *3 (N.D. Ill. June 20, 2014). Accordingly, Plaintiffs' theory that the continuing tort doctrine spares their IIED claim from the statute of limitations fails for at least two reasons.[5]

First, Plaintiffs cannot point to any "extreme and outrageous" conduct pled in the Amended Complaint that occurred within the statute of limitations. The only alleged conduct that even arguably occurred within the one-year window is that Defendant Griparis purportedly "texted

---

[5] Plaintiffs conceded their IIED claim against the City is time-barred. ECF No. 75 at 34.

Dickinson telling him in essence to 'stick to the story,'" on unspecified dates across two years. ECF No. 58 at ¶ 74. But the Amended Complaint does not give any context to the alleged text messages. Indeed, it is not even clear from the Amended Complaint that the "story" relates to O'Dekirk. Plaintiffs' impermissible leap that Griparis's texts to Dickinson were an "ongoing attempt to continue to imprison" O'Dekirk is unsupported by their pleading and should be rejected. Based on the averments in the Amended Complaint, Griparis's communications *to a non-party* are not unlawful acts or conduct that could possibly constitute a predicate for a continuing tort of IIED. Further, the factual allegations in the Amended Complaint are insufficient to determine whether the texts from Griparis fell within the applicable statute of limitations. As pled, Griparis sent Dickinson the referenced texts "at various times in 2021 and 2022." *Id.* at ¶ 74. Given that Plaintiffs filed their initial Complaint on July 19, 2023 (ECF No. 1), even if a continuing tort theory applied, Plaintiffs have not sufficiently pled to establish that Griparis sent such a text after July 19, 2022.

Second, if the continuing tort theory was available based on Griparis's texts, Plaintiffs could use that theory only against Griparis because, as the title of Count VII clearly states, Plaintiffs seek relief for IIED—not a conspiracy to commit IIED. As such, Plaintiffs' reliance on group pleading is improper. The law requires that Plaintiffs specifically plead the elements of IIED as to each Defendant independently. *See e.g.*, *Bank of Am., N.A. v. Knight,* 725 F.3d 815, 808 (7th Cir. 2013) ("liability is personal"); *Vaugh v. Biomat USA, Inc.*, Case No. 20-cv-04241, 2022 WL 1266389 (N.D. Ill. Apr. 28, 2022); *Rysewyk v. Sears Holdings Corp., KCD IP, LLC*, No. 15 CV 4519, 2015 WL 9259886 (N.D. Ill. Dec. 18, 2015) (ruling that a "group pleading cannot save a complaint when more specific allegations do shed light on the roles of different entities"). "Details about who did what are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief must include such

particulars." *Vaugh*, 2022 WL 1266389 at *2 (quoting *Atkins v. Hasan*, No. 15 cv 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015)). To that end, Plaintiffs cannot use Griparis's texts to Dickinson—a non-party—to "stick to the story," without any additional context (*see* ECF No. 58 at ¶ 74), to support a continuing IIED tort claim by any of the other Defendants.

### B. Plaintiffs' Response Improperly Relies on Group Pleading and Factual Allegations Beyond the Amended Complaint.

Plaintiffs' Response heavily relies on impermissible group pleading extrapolated from new content despite that courts consider only the averments in the four corners of the operative complaint. *See Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995); *Catledge v. Cook Cnty. Bd. President Stroger*, No. 04 C 7196, 2005 WL 3159242, at *1 (N.D. Ill. Nov. 22, 2005). Specifically, Plaintiffs' Response argues that Defendants are liable for IIED because "Defendants" "turned over fabricated evidence to the Illinois State Police and FBI, and the alleged criminal conduct was investigated by these authorities." *See* ECF No. 75 at 3, 6–7, 9, 17–19, 31, 35, 37–38. But that is not what the Amended Complaint alleges. It never even mentions the FBI—not once. Plaintiffs allege that the ISP performed a "subsequent 'three-tiered' forensic investigation of *Dickinson's* phone, which did not yield pictures of his genitals," (ECF No. 58 at ¶ 53 (emphasis added)), and that Defendant Reid copied the phone and provided only a redacted copy "for further investigation," without identifying the recipient or investigating body, *id.* at ¶¶ 54–58. But it lacks any allegation that Defendant Reid or any other Defendants conducted their own investigations or otherwise participated in any investigation of O'Dekirk.

Far more telling is what the Amended Complaint does not allege. It does not say that O'Dekirk was the target of the ISP investigation. It does not say that the ISP investigation involved any search of O'Dekirk's phone, person, or property. And, aside from Reid turning over a copy of Dickinson's phone, it does not say that any of the Defendants communicated any evidence relating

to O'Dekirk, Dickinson, or anyone else, to the ISP (or FBI). Accordingly, Plaintiffs' arguments that "Defendants" committed IIED against Plaintiffs by passing "fabricated evidence" to the ISP and FBI for investigation of O'Dekirk is simply not supported by the non-conclusory allegations in the Amended Complaint. These newly advanced facts, present only in Plaintiffs' Response brief, should be stricken for purposes of ruling on Defendants' Rule 12(b)(6) motions. *Palda*, 47 F.3d at 875.

### C.       The As-Pleaded Allegations Do Not Rise to the Level of IIED.

Setting aside the supplemental theatrics in Plaintiffs' Response, the Amended Complaint does not allege facts sufficient to rise to the level of plausible IIED as to any of the Defendants. As a cause of action, IIED is reserved for truly outrageous conduct that is intolerable in civilized society. *Tucker v. G4S Justice Servs., LLC*, No. 10 C 7058, 2011 WL 867272, at *2 (N.D. Ill. Mar. 11, 2011). Plaintiffs concede that courts generally sustain IIED claims only where false accusations lead to substantive legal action against the plaintiff. *See* ECF No. 75 at 36 (citing *Buchmeier v. City of Berwyn*, No. 14 C 6750, 2015 WL 4498742, at *6 (N.D. Ill. July 23, 2015)). No such legal actions occurred here. Rather, Plaintiffs argue that the Court should deviate from the general norm because of the relationship between the parties, noting that Illinois courts consider whether defendants had authority over a plaintiff in determining if the underlying conduct was sufficiently extreme and outrageous for an IIED action. ECF No. 75 at 36 (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). Specifically, Plaintiffs contend that police officers are a category of people who could be in a position of authority relevant for an IIED inquiry, and that the Defendants were capable of carrying out their plan to get O'Dekirk criminally charged. *Id.* at 36–37.

In so arguing, however, Plaintiffs ignore two elephants in the room: (1) that O'Dekirk was not the target of the ISP investigation; and (2) that O'Dekirk was the Mayor, *i.e.*, the chief

executive for the City of Joliet, and Defendants were mostly City officials and employees. This is not a David and Goliath battle. Defendants were not members of the ISP or the FBI and had no authority to investigate or institute charges against O'Dekirk or anyone else on behalf of the state or federal government. Defendants had precisely zero power over Plaintiffs with respect to any ISP or FBI investigation. To that end, and because Plaintiffs concede that O'Dekirk was never even charged with a crime (let alone arrested, detained, or convicted), there is no reason for the Court to deviate from the settled precedent precluding IIED claims in these circumstances.

Because there is no sufficiently outrageous conduct alleged in the Amended Complaint, whether Plaintiff Palacios has special needs and whether Defendants knew of his special needs are irrelevant. Courts do not lower the high bar for IIED claims for special needs plaintiffs if the conduct was not directed at the special needs plaintiff *because* of his special needs. *See e.g.*, *Incardone v. Royal Caribbean Cruises, Ltd.*, 2020 WL 2950684, at *6 n.5 (S.D. Fla. Jan. 18, 2020). To be sure, however, the Amended Complaint never alleges that any of the Defendants knew of Palacios's special needs. Plaintiffs merely speculate that even if Defendants were unaware of Palacios's condition, they "had to imagine the consequences of to [sic] the family of a man who feared he was going to be charged with a crime he did not commit." ECF No. 75 at 38. Even if this "fact" were included in the pleading, which it is not, it would still be insufficient for Palacios to sustain a claim. *See Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1081 (1st Dist. 2012) (finding plaintiff's vague claim that defendants "knew with a high probability [that their conduct] would cause such distress," was insufficient, as, "[t]here was no allegation that defendants knew plaintiff suffered from dementia or some other impairment"). Moreover, Plaintiffs' unsubstantiated conclusion implies that Defendants should anticipate that *every* family member would be severely emotionally distressed by the situation pled. That is a particularly large

leap here, where the Amended Complaint notes that Palacios is O'Dekirk's stepson, but omits any other information about their relationship. This is exactly the kind of speculative and conclusory inquiry that courts disregard in deciding a motion to dismiss. *See e.g.*, *Fricano v. Chi. White Sox, Ltd.*, No. 1-10-1978, 2012 WL 6950243, at *13 (Ill. App. Ct. Feb. 10, 2012) ("[Plaintiff] is unable to satisfy any of the elements of her IIED claim. Her brief merely makes the bald assertion that defendants 'knew or reasonably should have known that their actions had a high probability of causing severe emotional distress to her,' but does not cite anything in the record which would support such a claim").

    **D.**    **Plaintiffs Did Not Plead Allegations Sufficient to Establish They Suffered Severe Emotional Distress.**

Plaintiffs' IIED claims are also futile because they failed to plausibly plead that they actually-suffered "severe emotional distress." Plaintiffs claim that they were injured as follows: (1) O'Dekirk was defamed and ridiculed, and his political career was damaged; (2) Rebecca Marie was publicly humiliated and caused "great stress" and "great emotional distress"; and (3) Mason Palacios was injured in that "hearing this news caused him mental and physical health problems." ECF No. 58 at ¶¶ 77–81. As to O'Dekirk and his wife, these allegations are patently insufficient to predicate their IIED claim: "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Parker v. Side by Side, Inc.*, 50 F.Supp.3d 988, 1022 (N.D. Ill. 2014) (quoting *Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148, 155 (1999)). Plaintiffs' Response makes no effort to defend Rebecca Marie's IIED claim. *See* ECF No. 75 at 34–39. Further as to O'Dekirk, the newly asserted facts that "the ISP and FBI [were] breathing down

Plaintiffs' neck for a crime he did not commit," are improper and should be ignored as they are wholly absent from the Amended Complaint. *Id.* at 38; *Palda*, 47 F.3d at 875.

Regarding Palacios, the Amended Complaint is incredibly vague about his special needs, including the general variety of his condition, whether his special needs are physical, mental, or emotional in nature, and any particular accommodations he may require. Plaintiffs also failed to describe the nature, duration, or severity of the "mental and physical health problems" that Palacios claims to have suffered from hearing the "news" about Plaintiff O'Dekirk, or whether those "problems" are minor exacerbations of existing conditions. *See Padilla v. City of Chicago*, 932 F.Supp.2d 907, 930 (N.D. Ill. 2013) (intensity and duration of plaintiff's distress is material to whether it is severe enough to recover for IIED). The Illinois Supreme Court has long warned against "[i]ndiscriminate allowance of actions for mental anguish that would encourage neurotic overreactions to trivial hurts," reinforcing the line between slight hurts and the "severe mental disturbances" caused by intentional actions that lack social utility—only the latter are potentially actionable. *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961); *Duffy*, 981 N.E.2d at 1076, 1081-82; *Miller v. Equitable Life Assur. Soc. of the U.S.*, 537 N.E.2d 887, 889 (Ill. App. Ct. 1989); *see also*, *Montgomery v. Wellpath Med.*, Case No. 3:19-cv-00675, 2022 WL 3589571 (M.D. Tenn. Aug. 22, 2022) (finding that, without greater specificity, plaintiff's allegation that her distress exacerbated her underlying medical condition was insufficient to state a claim for IIED).

Here, Plaintiffs attempt to use vague allegations about Palacios's special needs status as both a sword and a shield for tactical gain. However, the Amended Complaint does not include sufficient alleged facts to pass the *Twombly/Iqbal* test as to whether any emotional distress Palacios may have experienced rose to a sufficiently severe level to plausibly establish an IIED claim. For

each of the independent reasons set forth above, Plaintiffs have not set forth a legally viable cause of action for IIED as to any Defendant. Count VII should be dismissed with prejudice.

## V.  THE INDEMNIFICATION CLAIM CANNOT STAND ALONE.

The indemnification claim against the City must be dismissed once all the other claims are dismissed. This is common sense, because without an underlying claim, there is nothing for which to indemnify. It is also state law. 745 ILCS 10/2–109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.).

## CONCLUSION

Even taking the facts in the Amended Complaint (as opposed to the labels and speculations in the brief) as true, they establish nothing more than allegations of hard-nosed machinations to take down a political foe and *perhaps* a plausible state law claim for defamation. But Plaintiffs did not bring a claim for defamation, and have even disclaimed such a claim, because it would have been self-evidently untimely. More fundamentally, "the price of political dirty tricks must be collected at the ballot box rather than the courthouse." *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 940 (7th Cir. 2018). O'Dekirk has every right to continue fighting his political battles, but that fight belongs elsewhere. Dismissing this lawsuit with prejudice does not require this Court to take sides in a political brawl. Rather, a swift dismissal is imperative because none of Plaintiffs' legal claims have merit, and in a federal court, the facts and the law trump rhetoric and politics.

WHEREFORE, for the reasons set forth above and in their respective Motions to Dismiss, Defendants, AL ROECHNER, MARC REID, PAT MUDRON, JIM MCFARLAND, JOSEPH HOSEY, NANCY GRIPARIS, and CITY OF JOLIET respectfully request that this Honorable Court enter an order dismissing all claims in the Amended Complaint *with prejudice,* and granting any additional relief the Court deems just and proper.

Dated: December 4, 2023

Respectfully submitted,

**On behalf of Al Roechner
and Nancy Griparis**
*/s/Danessa P. Watkins*
Danessa P. Watkins
Ryan B. Jacobson
AMUNDSEN DAVIS, LLC
150 North Michigan Avenue, Suite #3300
Chicago, Illinois 60601
(312) 894-3376 DIRECT
*dwatkins@amundsendavislaw.com*
*rjacobson@amundsendavislaw.com*

**On behalf of Marc Reid and Pat Mudron**
*/s/ Michael S. Ferrell*
Michael S. Ferrell
Daniel R. Simandl
Epstein, Becker, and Green P.C.
227 W Monroe Street, Suite 3250
Chicago, IL 60606
Tel: 312.499.1480
*mferrell@ebglaw.com*
*dsimandl@ebglaw.com*

**On behalf of City of Joliet**
*/s/G. David Mathues*
Michael D. Bersani
Glenn David Mathues
Hervas, Condon, and Bersani, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Tel: 630-860-4774
*mbersani@hcbattorneys.com*
*dmathues@hcbattorneys.com*

**On behalf of Joseph Hosey**
*/s/James A. Murphy*
James A. Murphy
Mahoney, Silverman and Cross Ltd.
822 Infantry Drive, Suite 100
Joliet, IL 60435
Tel: 815-730-9500
*jmurphy@msclawfirm.com*

**On behalf of Jim McFarland**
*/s/John V. Schrock*
John V. Schrock
John Shrock Law
24047 West Lockport Street
Suite 201-M
Plainfield, IL 60544
Tel: 815-246-3100
*jvschrock@aol.com*

Cc: all counsel of record via ECF