**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT O'DEKIRK, REBECCA MARIE, as individual and as Guardian for MASON PALACIOS,** | ) ) ) | |
| | ) | **No. 23-cv-4658** |
| **Plaintiffs,** | ) ) | |
| v. | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **AL ROECHNER, MARC REID, PAT MUDRON, JIM MCFARLAND, JOSEPH HOSEY, NANCY GRIPARIS and CITY OF JOLIET,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Robert O'Dekirk—the former mayor of the City of Joliet—with his wife and his stepson, filed this lawsuit against O'Dekirk's "political opponents" (namely, defendants Al Roechner, Marc Reid, Pat Mudron, Jim McFarland, Joseph Hosey, and Nancy Griparis), and the City of Joliet alleging that they devised a plan to create political backlash against O'Dekirk in the hopes of spoiling his bid for re-election and subjecting him to criminal charges. In their amended complaint ("Complaint"), plaintiffs bring a civil rights claim pursuant to 42 U.S.C. §1983, as well as claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961–68, and state law.

Before the Court are defendants' motions to dismiss pursuant to Federal Rule 12(b)(6),[1] which assert that dismissal of plaintiffs' federal claims is proper for numerous reasons. Among

---

[1] The pending motions are as follows: Defendants Marc Reid and Pat Mudron's Motion to Dismiss the Amended Complaint, (Dckt. #59); Al Roechner's and Nancy Griparis' Rule 12(b)(6) Motion to Dismiss the Amended Complaint, (Dckt. #61); Defendant City of Joliet's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Rule 12(b)(6), (Dckt. #69); Defendant Joseph Hosey's Motion to Dismiss Amended Complaint, (Dckt. #71); and Defendant Jim McFarland's Motion to Dismiss, (Dckt. #76).

other things, defendants assert that plaintiffs fail to allege a violation of their federal constitutional or statutory rights as required by Section 1983, and further, that their RICO claims must be dismissed because they fail to adequately allege any injury to their "business or property" as defined by the statute. For the reasons set forth below, the Court agrees. Defendants' motions to dismiss, (Dckt. ##59, 61, 69, 71, 76), are therefore granted with respect to plaintiffs' federal claims against defendants, and the Court relinquishes jurisdiction over plaintiffs' state law claims.

## I.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and the complaint must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## II.    BACKGROUND

The facts below are drawn from the allegations in plaintiffs' Complaint, (Dckt. #58). Robert O'Dekirk is the former mayor of defendant City of Joliet (the "City"). (*Id.* ¶6). O'Dekirk sues the City, as well as political opponents that "disliked or hated O'Dekirk" and "routinely opposed" his initiatives as mayor. (*Id.* ¶¶10, 26, 32). The "Individual Defendants" include: (1) Al Roechner, former Chief of Police of the City; (2) Nancy Griparis, the wife of

Roechner; (3) Marc Reid ("Reid"), the former Deputy Chief of Operations for the City; (4) Pat Mudron, councilman for District 2 in Joliet; (5) Jim McFarland, former councilman for Joliet; and (6) Joseph Hosey ("Hosey"), former managing editor of the Herald News. (*Id.* ¶¶11–20, 22).

As alleged, the Individual Defendants met on November 1, 2020 and formed a "cabal" with the purpose of creating "public political backlash against O'Dekirk." (*Id.* ¶¶23–25). To that end, the Individual Defendants allegedly agreed and conspired to fabricate false claims against O'Dekirk, which would cause him to be charged with a crime, thereby damaging his political standing and reputation in Joliet. (*Id.* ¶30).

Plaintiffs allege that the Individual Defendants possessed intimate photos that then councilman Donald Dickinson ("Dickinson"), a non-party, took of his genitals and sent to a romantic partner. (*Id.* ¶¶35–36). During the meeting, the Individual Defendants threatened to release the photos unless Dickinson made a false police report against O'Dekirk. (*Id.* ¶¶34, 37).

That same evening, Dickinson made a statement to Reid claiming that O'Dekirk acquired the intimate photographs of Dickinson and threatened to publicly release them to ruin Dickinson's career. (*Id.* ¶¶39–40). Reid created a police report based on Dickinson's allegedly fabricated statements. (*Id.* ¶¶42, 44). The police report was never filed with the Joliet Police Department and was never entered into any Joliet Police database. (*Id.* ¶50). O'Dekirk was never charged with any crime in connection with Dickinson's report. (*Id.* ¶62). Reid also obtained and cloned Dickinson's phone before providing an altered copy of the phone to the Illinois State Police for investigation. (*Id.* ¶¶53–58). On November 2, 2020, the day after the meeting, Hosey printed an article in the Herald News detailing the allegations of Dickinson's allegedly fabricated police report against O'Dekirk. (*Id.* ¶65).

O'Dekirk asserts that "by agreeing to fabricate false claims in a police report and pursue false charges" defendants "deprive[d] him of rights," (*id.* ¶92), and, as a result of defendants' actions, he was "publicly defamed" and "ridiculed in the public eye," his "reputation" and "political career" were damaged, and he lost re-election for mayor in April 2023, (*id.* ¶¶76–79). O'Dekirk's wife, Rebecca Marie, and stepson, Palacios, are also named plaintiffs. They claim to have suffered stress, emotional distress, and mental and physical health problems due to the public humiliation defendants inflicted on O'Dekirk. (*Id.* ¶¶80–81).

In their seven-count Complaint, plaintiffs allege; (1) a violation of 42 U.S.C. §1983; (2) racketeering in violation of 18 U.S.C. §1962(c); (3) conspiracy to commit racketeering in violation of 18 U.S.C. §1962(d); (4) conspiracy to commit racketeering in violation of 18 U.S.C. §1962(d) (Vicarious Liability); (5) indemnification; (6) willful and wanton conduct; and (7) intentional infliction of emotional distress. (*Id.* ¶¶91–108).

## III. DISCUSSION

Defendants move to dismiss each of the federal and state claims plaintiffs lodge against them. Given that the Court's supplemental jurisdiction over plaintiffs' state law claims against defendants hinges on the viability of their federal claims, the Court will begin with the latter. For the reasons set forth below, the Court finds that plaintiffs' federal claims must be dismissed, and it relinquishes jurisdiction over plaintiffs' state law claims.

### A. Plaintiffs' Section 1983 claim must be dismissed because they fail to allege that one or more defendants violated their rights as secured by the Constitution or laws of the United States.

As plaintiffs themselves acknowledge, (Dckt. #75 at 5), "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced." *Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2003) (citing

4

*Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir.1997)).  Consequently, "[l]iability under §1983 requires proof that the defendants were acting under color of state law and that the defendants' conduct violated the plaintiff's rights, privileges, or immunities secured by the Constitution or laws of the United States." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 471 (7th Cir. 1997).  Plaintiffs' Complaint[2] and opposition brief set out three bases on which they seek Section 1983 liability: conspiracy to fabricate evidence; obstruction of justice; and "due process— shocking the conscience."  (Dckt. #58 ¶¶92–93; Dckt. #75 at 4–10).  Defendants, however, argue that the Section 1983 claim should be dismissed because, *inter alia,* plaintiffs fail to allege facts showing an injury to their constitutional or federal statutory rights.

### 1. Because plaintiffs fail to plead a fabrication of evidence claim, their allegation that defendants engaged in a conspiracy to fabricate evidence does not provide a basis for Section 1983 liability.

Plaintiffs assert defendants engaged in a conspiracy to fabricate evidence against O'Dekirk in violation of Section 1983.  "A §1983 conspiracy claim requires both (1) an underlying constitutional violation and (2) an agreement among the defendants to inflict the unconstitutional harm." *Green v. Howser*, 942 F.3d 773, 778 (7th Cir. 2019); *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018).  As such, a conspiracy to inflict harm does not result in a Section 1983 violation unless the harm inflicted violates a plaintiff's constitutional rights.  *See, e.g., Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 351 (7th Cir. 2019) (conspiracy claims "depend on proof of an underlying constitutional violation."); *Andersen v. Vill. of Glenview*, 821 Fed.Appx. 625, 629 (7th Cir. 2020) ("And with no underlying constitutional violation, there

---

[2] Defendants argue that the Amended Complaint is deficient because the allegation that defendants "did act to deprive O'Dekirk . . . of rights," (Dckt. #58 at ¶92), is not specific enough to pass muster. However, "Rule 8 requires only that a complaint must set forth plausible facts that, if true, would support a claim for relief," and "plaintiffs do not need to plead legal theories."  *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) (cleaned up).

could be no conspiracy between Gimbel and Popkov to violate her Fourth Amendment rights.").

Consequently, the viability of plaintiffs' conspiracy claim depends upon whether they have

sufficiently alleged a fabrication of evidence claim.

"A deprivation of liberty is a necessary element of a due process claim premised on

allegations of evidence fabrication," *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016),

and the Seventh Circuit has "consistently held that a police officer who manufactures false

evidence against a criminal defendant violates due process if that evidence is later used to

deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580

(7th Cir. 2012). As such, it is clear that a plaintiff who alleges that he was convicted and

imprisoned on the strength of fabricated evidence has stated a fabricated evidence claim. *See,

e.g.*, *Fields v. Wharrie*, 740 F.3d 1107, 1109, 1113 (7th Cir. 2014); *White v. City of Chicago*, 149

F.Supp.3d 974, 976 (N.D.Ill. 2016). On the other hand, it is likewise clear that a plaintiff who

was arrested, immediately released on bond, and found not guilty at trial does *not* have a viable

evidence fabrication-based due process violation even if he was prosecuted with fabricated

evidence. *See, e.g.*, *Bianchi*, 818 F.3d at 319-20 (citing cases).[3]

In this case, plaintiffs allege that defendants fabricated evidence concerning O'Dekirk

and that they tried—albeit unsuccessfully—to get criminal charges filed against him based on

that fabricated evidence. Naturally, because O'Dekirk was never charged with a crime related to

the fabricated evidence, he was neither arrested nor deprived of his liberty on account of that

---

[3] Judges in this District have issued conflicting opinions as to whether a defendant who was arrested, deprived of liberty while held in pretrial detention, and subsequently acquitted at trial after being prosecuted with fabricated evidence can bring an evidence fabrication-based due process claim. *Compare Chachere v. City of Chicago*, No. 16 C 2401, 2018 WL 1087643, at *8 (N.D.Ill. Feb. 28, 2018) (holding that such a claim is viable); *Myvett v. Chicago Police Detective Edward Heerdt*, 232 F.Supp.3d 1005, 1015–19 (N.D.Ill. 2017) (same), *with White*, 149 F.Supp.3d at 976 (finding that such a claim is non-actionable); *Ulma v. Avila*, No. 15 CV 3659, 2016 WL 3671449, at *8–9 (N.D.Ill. July 11, 2016) (same).

fabricated evidence.  Since "an act of evidence fabrication doesn't implicate due-process rights *unless* the fabricated evidence is later used to deprive the [criminal] defendant of her liberty in some way," *Bianchi*, 818 F.3d at 319 (cleaned up), plaintiffs have failed to allege facts stating an evidence fabrication-based due process claim and their derivative conspiracy claim is doomed as well.  *Coleman*, 925 F.3d at 351; *Anderson*, 821 Fed.Appx. at 629; *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("conspiracy is not an independent basis of liability in §1983 actions.").[4]

### 2. Defendants' alleged violation of federal criminal laws cannot support liability under Section 1983 because there is no private right of action under these statutes.

Plaintiffs assert that defendants' alleged obstruction of justice can serve as a basis for Section 1983 liability because their conduct violated the following criminal statutes: 18 U.S.C. §1512 ("Tampering with a witness, victim, or an informant"); 18 U.S.C. §1518 ("Obstruction of criminal investigations of health care offenses"); and 18 U.S.C. §1519 ("Destruction, alteration, or falsification of records in Federal investigations and bankruptcy").  However, plaintiffs cannot base their Section 1983 claim on these criminal laws because there is no private right of action that would enable plaintiffs to bring a civil lawsuit based the alleged violations of these statutes. *See, e.g., Szplett v. Kenco Logistic Servs., LLC*, No. 19 C 2500, 2020 WL 1939388, at *3 (N.D.Ill. Apr. 22, 2020) (no private right of action under 18 U.S.C. §1512); *Nelson v. Chertoff*, No. 07 C 2991, 2008 WL 4211577, at *4 (N.D.Ill. Sept. 10, 2008) (same); *Randles v. United States*, No. CV 23-00200-KD-MU, 2024 WL 346518, at *2 & n.3 (S.D.Ala. Jan. 30, 2024) (no private right of action under 18 U.S.C. §1518); *Cohen v. Nevada*, No. 307CV-00043-LRH VPC,

---

[4] Plaintiffs cite no case where a plaintiff successfully alleged an evidence fabrication-based due process claim even though plaintiff was in no way deprived of his liberty.  Nor has the Court's own research uncovered any such authority.

2007 WL 4458174, at *2 (D.Nev. Dec. 13, 2007) (same); *Downer v. Bureau of Land Mgmt.*, No. 20-CV-191-SWS, 2020 WL 13049422, at *8–9 (D.Wyo. Nov. 2, 2020) (no private right of action under 18 U.S.C. §1519); *Antonelli v. Kennedy Hosp.*, No. CV1713780RBKKMW, 2018 WL 443455, at *2 (D.N.J. Jan. 16, 2018) (same).

Plaintiffs cite no authority to the contrary and, as the Seventh Circuit has made clear, this Court is not at liberty to impliedly create a private right of action under these criminal laws "because the text of the statutes does not demonstrate that Congress intended to create a private right and remedy." *Charles v. Anna-Jonesboro Nat'l Bank*, No. 22-3261, 2023 WL 6818643, at *2 (7th Cir. Oct. 17, 2023) (noting that "it is rare that courts imply a private right of action into criminal statutes because they are usually for the benefit of the general public, not a particular class.").

### 3. Plaintiffs have not alleged facts sufficient to show that they have a plausible substantive due process claim.

Next, plaintiffs contend that they have pleaded facts sufficient to allege a substantive due process claim because defendants' conduct "shocks the conscience." (Dckt. #75 at 9). To allege a viable substantive due process claim, plaintiffs must meet a high standard and allege conduct under color of state law that "violated a fundamental right or liberty" *and* was so "arbitrary and irrational" as to "shock the conscience." *See Nelson v. City of Chicago*, 992 F.3d 599, 604 (7th Cir. 2021); *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). The scope of substantive due process "is very limited," and the "Supreme Court cautions against expanding its scope beyond barring government interference with the fundamental rights of marriage, reproduction, child-rearing, and bodily integrity 'because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Viehweg v. City of Mount Olive*, 559 Fed.Appx. 550, 552 (7th Cir. 2014), *quoting Collins v. Harker Heights*, 503 U.S. 115,

125 (1992). Moreover, the doctrine "protects against only the most egregious and outrageous government action." *Campos*, 932 F.3d at 975; *Nelson*, 992 F.3d at 604.

Plaintiffs' effort to allege a substantive due process claim fails for two reasons.

First, plaintiffs fail to allege a "fundamental right or liberty" that O'Dekirk was deprived of based on defendants' conduct. To reiterate, O'Dekirk was neither arrested nor charged nor convicted nor deprived of liberty in any way on account of defendants' alleged scheme. Furthermore, even if plaintiffs' allegation that defendants' conduct caused O'Dekirk to lose his bid for reelection by a 2-1 margin and thereby cost him his job as mayor of Joliet were plausible (a proposition which defendants vehemently dispute), this allegation would not support plaintiffs' substantive due process claim because "[e]mployment, including public employment, is not a fundamental right." *Nelson*, 992 F.3d at 604; *Campos*, 932 F.3d at 975.

Second, defendants' alleged conduct—as distasteful, troubling, and wrongful as it appears—does not rise to the level of "shocking the conscience." As the Seventh Circuit has made clear, "every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation," *Lanigan*, 110 F.3d at 471 (cleaned up), and "abuse that is merely tortious or even 'abhorrent' does not offend substantive due process." *Viehweg*, 559 Fed.Appx. at 552; *Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003). Indeed, "[e]ven violations of the law resulting from bad faith do not necessarily amount to unconstitutional deprivations of substantive due process; conduct that is more egregious and more extreme is required." *McConkie v. Nichols*, 446 F.3d 258, 261 (1st Cir. 2006) (cleaned up); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019) ("Only the most egregious official conduct can meet this standard.") (cleaned up). As the Seventh Circuit has held, "behavior that is shocking enough to sustain a substantive due process claim typically

9

involves the use of intentional force against an individual's person or the threat of such force." *Robbin v. City of Berwyn*, 108 F.4th 586, 591 (7th Cir. 2024) (citing cases); *McConkie*, 446 F.3d at 261 ("Conscience-shocking conduct usually entails physical or psychological abuse, or significant interference with a protected relationship, such as the parent-child relationship.").

Moreover, conduct that shocks the conscience "in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998); *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998). Here, defendants' alleged misconduct occurred in the environment of a hotly contested mayoral election.

The world of electoral politics is not for the faint of heart: "[w]hen an individual makes the decision to enter the public arena as a political candidate, she enters an inherently adversarial and controversial environment," and "[a] candidate must accept the increased attention, criticism, scrutiny and even smears that come along with that decision." *Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist.*, No. 13-CV-4340 CS, 2015 WL 1379702, at *12 (S.D.N.Y. Mar. 25, 2015), *aff'd*, 637 Fed.Appx. 16 (2d Cir. 2016). Instances where opponents have accused candidates of engaging in criminal conduct or even (as alleged here) attempted to procure the issuance of criminal charges against them are not unheard of.[5]

---

[5] *See, e.g., Colson v. Grohman*, 174 F.3d 498, 504-06 (5th Cir. 1999) (former city council member who lost her bid for reelection sued the municipal police chief and other city officials under §1983, contending that they retaliated against her by knowingly making false accusations against her in public, attempting to pressure the County Attorney to issue formal criminal charges, and initiating a recall action against her that contained false allegations); *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 26-28 (1st Cir. 1996) (the former governor of Puerto Rico who lost his bid for re-election brought a §1983 claim against senators from the opposing political party alleging that they rigged legislative hearings to make it appear that he was involved in illegal activity and continuously labeled him as an assassin or murderer in public statements to the press to undermine his popularity with the electorate); *Footit v. Van De Hey*, No. 04-C-459, 2005 WL 156334, at *4 (E.D.Wis. June 29, 2005) (noting that plaintiff, who alleged that he was

As the Seventh Circuit has reflected:

> We mean no disrespect to politicians in recognizing that many false statements are made during political campaigns and that many a stratagem that one side deems clever will be seen by the opposition as a dirty trick. Opposing political figures may brand true statements as false and honest campaigning as a rotten subterfuge. Voters rather than judges must decide when one side has gone overboard. . . . Politics is a rough-and-tumble game, where hurt feelings and thwarted ambitions ae a necessary part of robust debate.

*Gonzalez v. Madigan*, 990 F.3 561, 564 (7th Cir. 2021) (cleaned up); *Jones v. Markiewizc-Qualkinbush*, 892 F.3d 935, 940 (7th Cir. 2018) ("The price of political dirty tricks must be collected at the ballot box rather than the courthouse."). "All of this is to say that 'more is fair in electoral politics than in other contexts.'" *Munoz-Feliciano*, 2015 WL 1379702, at *12, *quoting Blair v. Bethel School Dist.*, 608 F.3d 540, 544 (9th Cir. 2010). Simply put: "Politics ain't beanbag."[6]

The determination of whether the conscience-shocking standard has been met is a question of law for the court. *Armstrong*, 152 F.3d at 581. To recap, plaintiffs allege that the defendants coerced Dickinson to fabricate testimony, altered the contents of Dickinson's phone, then submitted the altered evidence to the Illinois State Police and other investigators in an unsuccessful effort to have O'Dekirk charged and convicted of a crime. They do not allege that defendants used physical force, made any threats of harm or violence, or interfered with any protected relationships.

Even taking plaintiffs' allegations as true, as the Court must on a motion to dismiss, they fall far short of plausibly alleging that defendants' actions were so outrageous as to

---

falsely accused of committing a crime, "is hardly the first politician to be accused of a crime by a political opponent. Attacks on the character of those holding public office are as old as the country itself.").

[6] This spot-on observation was coined by Finley Peter Dunne in 1898. *See United States v. Payne*, 894 F.Supp. 534, 536 n.2 (D.Mass. 1995).

"shock the conscience," particularly given the rough-and-tumble electoral context within which the actions occurred. *See, e.g., Robbin*, 108 F.4th at 591 ("mere verbal harassment, threats, or annoyances alone fail to clear the high bar."); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019) (holding that city attorney's unfulfilled threats of arrest "were certainly inappropriate" but "a far cry from the type of conduct recognized as conscience-shocking"); *Frei v. Town of Holland*, 212 Fed.Appx. 4, 6 (1st Cir. 2007) (allegations that the defendants committed perjury, falsified documents, and engaged in retaliatory action against the plaintiff were insufficient to establish substantive due process claim); *Cruz-Erazo v. Rivera-Montanez*, 212 F.3d 617, 623–24 (1st Cir. 2000) (rejecting substantive due process claim based on police officers' provision of false affidavits and testimony to support a fabricated burglary charge against plaintiffs); *Souza v. Pina*, 53 F.3d 423, 424, 427–28 (1st Cir. 1995) (no substantive due process violation when a murder suspect committed suicide after prosecutors caused or encouraged the media to link him to a series of murders); *Michel v. Town of Hampden*, No. 10-CV-30213-MAP, 2012 WL 893740, at *2 (D.Mass. Mar. 14, 2012) (plaintiff's allegations that local police maliciously procured arrest warrant, exaggerated the situation to state police, illegally searched the plaintiff's home, prosecuted him based on false evidence, and made defamatory statements about him in the media failed to meet the "shock the conscience" standard).

In sum: because plaintiffs fail to allege a violation of O'Dekirk's fundamental right or liberty *and* conduct by defendants that meets the shocks the conscience standard, the Court concludes that the Complaint does not state a viable substantive due process claim.

**B. Plaintiffs' RICO claims must be dismissed because they have failed to allege that they suffered an injury to their business or property within the meaning of the statute.**

Defendants argue that plaintiffs' claims for the violation of RICO and conspiracy to violate RICO should be dismissed because plaintiffs have failed to adequately allege: (1) an injury to their "business or property"; (2) the existence of two RICO predicate acts; (3) a pattern of racketeering activity; or (4) the existence of a legally cognizable "enterprise."

Defendants' first argument, that plaintiffs fail to adequately allege an injury to "business or property," is persuasive. To state a claim for a civil RICO violation, plaintiffs must allege an injury to "business or property by reason of" a racketeering violation because such an injury is a necessary element of the cause of action. *Ryder v. Hyles*, 27 F.4th 1253, 1256 (7th Cir. 2022) ("it is clear that the business or property requirement is a non-jurisdictional element of the cause of action Congress supplied in §1964(c)."). The purpose of the "business or property" injury requirement is to "'preclude recovery for personal injuries and the pecuniary losses incurred there-from.'" *Id.*, at 1257, *quoting Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992). To satisfy the statute, an "injury to business or property must be concrete, not speculative," and "the damages must be clear and definite." *Viehweg v. Ins. Programs Mgmt. Grp.*, No. 24-1287, 2024 WL 4165078, at *1 (7th Cir. Sept. 12, 2024). A plaintiff's failure to allege the requisite injury will—without more—lead to the dismissal of plaintiff's RICO claim. *Ryder*, 27 F.4th at 1256.

In their Complaint, plaintiffs allege that O'Dekirk was "publicly defamed" and "ridiculed on account of defendants' actions. (Dckt. #58 ¶¶76–79). Defendants assert—and plaintiffs do not dispute—that the above injuries are personal injuries that are not compensable under RICO. *See, e.g., Doe*, 958 F.2d at 770 (citing *Rylewicz v. Beaton Services*, 698 F.Supp. 1391, 1396 (N.D.Ill. 1988), *aff'd*, 888 F.2d 1175 (7th Cir. 1989)). However, in their response to defendants'

motions to dismiss, plaintiffs note that they sought "lost wages" for O'Dekirk in their prayer for relief in the Complaint. (Dckt. #75 at 29). Plaintiffs then state that:

> While this could be more specific, Plaintiff O'Dekirk does in fact own a business, a law practice, which has suffered directly as a result of the conduct of the Defendants. Plaintiff has lost potential clients on account of information publicly disseminated by the Defendants' scheme.

(*Id.*).

These facts fail to plausibly allege an injury to O'Dekirk's "business or property" for two reasons.[7] First, to the extent that O'Dekirk's loss of potential clients was caused by the damage to his reputation on account of being defamed by defendants, his loss of clients is derivative of his personal injuries and is not recoverable under the law in this Circuit. *Ryder*, 27 F.4th at 1257; *Santana v. Cook Cnty. Bd. Of Rev.*, 679 F.3d 614, 623 (7th Cir. 2012) (an "alleged reputational injury is *personal*") (emphasis in original); *Doe*, 958 F.2d at 767, 770.[8]

Second, O'Dekirk had no property right in potential clients for his law practice. *See, e.g., Gress v. Reg'l Transportation Auth.*, No. 17 C 8067, 2024 WL 245185, at *6 (N.D.Ill. Jan. 23, 2024) ("Gress had no property right in potential prospective employment."). Moreover, although plaintiffs might have been able to allege an injury that meets the "business or property" requirement if they had alleged in their Complaint or stated in their brief that defendants

---

[7] Although defendants assert that the Court cannot consider these factual assertions because they were not included in the Complaint, the Seventh Circuit has held that plaintiffs "may supplement the complaint with factual narration in an affidavit or a brief" to elaborate on their allegations. *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997).

[8] Plaintiffs do not acknowledge or attempt to distinguish Seventh Circuit precedent but instead rely on the Second Circuit's decision in *Horn v. Med. Marijuana, Inc.*, 80 F.4th 130 (2d Cir. 2023), *cert. granted*, 144 S.Ct. 1454 (2024). (Dckt. #75 at 29). However, the Second Circuit expressly disagreed with Seventh Circuit precedent in reaching its holding that RICO's civil action provision "does not bar a plaintiff from suing for injuries to business or property simply because they flow from, or are derivative of, an antecedent personal injury." *Horn*, 80 F.4th at 135 & 137 n.5 (disagreeing with the Seventh Circuit's contrary holding). This Court is bound by the above Seventh Circuit precedent.

"interfere[ed] directly" with O'Dekirk's potential clients, they have not done so. *See Santana*, 679 F.3d at 623. As such, plaintiffs' speculative allegation that O'Dekirk suffered lost wages due to a loss of potential law clients does not suffice to plausibly allege that he "suffered a business or property injury within the meaning of §1964(c)." *Doe*, 958 F.2d at 770; *Santana*, 679 F.3d at 623; *Bowen v. Adidas Am. Inc.*, 84 F.4th 166, 177 (4th Cir. 2023) ("injury to a 'mere expectancy' or the loss of an opportunity is insufficient" for a RICO claim) (citing cases); *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 888–89 (10th Cir. 2017) (A plaintiff cannot recover for "speculative future injuries under §1964(c)."); *Gress*, 2024 WL 245185, at *6.

In sum: plaintiffs fail to allege an injury to their "business or property" for which RICO provides a remedy, requiring dismissal of RICO claims alleged in Counts II, III, and IV of the Complaint. It is therefore unnecessary for the Court to reach the other arguments raised by defendants with respect to these counts.

### C. Plaintiff's federal claims are dismissed with prejudice.

Although plaintiffs seek leave to amend their Complaint for a second time if it is dismissed, they do not make any specific argument regarding how a proposed amendment to their Section 1983 claim could cure the deficiencies in their current Complaint. Given the reasons for the dismissal of this claim as outlined above in Section III(A), the Court finds in its discretion that any effort to amend this claim would be futile. *Ryder*, 27 F.4th at 1258 (district courts have discretion to deny leave to amend when doing so would be futile).

Moreover, although plaintiffs articulate a desire to amend their RICO claims to provide a "more detailed pleading about the damage to [O'Dekirk's] law practice," (Dckt. #75 at 29), the Court likewise finds that this amendment would be futile. To begin, if plaintiffs simply alleged that O'Dekirk's law practice was less lucrative after defendants' conduct, such an allegation,

without more, would reflect the injury to a speculative expectancy that is not actionable under RICO. *Bowen*, 84 F.4th at 177; *Safe Streets*, 859 F.3d at 888–89. Furthermore, even if O'Dekirk knew the identity of his prospective clients (which he does not assert and may be unlikely depending on the nature of his law practice), there is no basis to find that plaintiffs could plausibly allege that defendants would have known of them, let alone that defendants would have taken action to deter them from retaining O'Dekirk as their counsel. *See Santana*, 679 F.3d at 623 (denying leave to amend where plaintiff failed to allege how it is possible for the defendant to identify the plaintiff's clients). The thrust of the Complaint is that defendants schemed to "create a public political backlash against O'Dekirk with the goal of him losing his position as mayor of Joliet and being charged criminally." As distasteful as this may be, plaintiffs do not allege that defendants' scheme extended beyond that to an effort to destroy O'Dekirk's law practice.

Consequently, the Court will dismiss plaintiffs' Section 1983 and RICO claims with prejudice.

### D. The Court Relinquishes Jurisdiction Over Plaintiffs' State Law Claims

With the federal claims dismissed with prejudice, only plaintiffs' state law claims against defendants for indemnification, willful and wanton conduct, and intentional infliction of emotional distress remain. The Seventh Circuit has embraced a "sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Accordingly, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiffs' pendent state law claims. *See Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after

dismissing every claim over which it had original jurisdiction is purely discretionary."); *Doxtator v. O'Brien*, 39 F.4th 852, 867 (7th Cir. 2022) ("Without any federal claims over which it had original jurisdiction, the district court's decision not to exercise supplemental jurisdiction over the pendent state law claims was not an abuse of discretion." Accordingly, plaintiffs' state law claims against defendants are dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss, (Dckt. ##59, 61, 69, 71, 76), are granted as to plaintiffs' federal claims and those claims are dismissed with prejudice. The Court relinquishes jurisdiction over plaintiffs' state law claims and dismisses them without prejudice.

**DATE: February 18, 2025**

Jeffrey I. Cummings
United States District Court Judge